**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**LaRita Anne BOLZER,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William BOLZER, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jerry THOMPSON, Defendant-Appellant.**

**Nos. 76–2909 to 76–2911.**

United States Court of Appeals,
Ninth Circuit.

June 30, 1977.

---

David J. Wing, submitted on briefs, Poore, McKenzie, Roth, Robischon & Robinson, Butte, Mont., for defendants-appellants.

Thomas A. Olson, U.S. Atty., Robert L. Zimmerman, Asst. U.S. Atty., Billings, Mont., submitted on briefs for plaintiff-appellee.

Before CARTER and CHOY, Circuit Judges, and HOFFMAN,* District Judge.

## OPINION

**JAMES M. CARTER, Circuit Judge:**

This is an appeal by three defendants of their convictions by a jury for armed mail robbery, in violation of 18 U.S.C. §§ 1706 and 2114, and for conspiracy, in violation of 18 U.S.C. § 371.

Appellants argue that count one of the indictment for conspiracy should have been dismissed because of a fatal variance between the allegations in the indictment and the proof at trial. Appellant Thompson also objects to the introduction of testimony from his ex-wife. We find that appellants were not prejudiced by the variance and that the testimony of Thompson's ex-wife was properly introduced. We therefore affirm.

### Facts

In May and June 1975, appellants met several times to plan a robbery of a United States Postal Service truck trailer at Livingston, Montana. On May 29, 1975, appellant LaRita Anne Bolzer purchased a shotgun for use in the robbery. Appellants Thompson and William Bolzer (LaRita's husband) conducted surveillance of the postal facility at Bozeman, Montana, allegedly to determine the custom and habits of the truck drivers on their routes. Thompson was a former postal employee and knew the details of the postal operation in the area.

On June 25, 1975, appellants robbed driver Donald Morrow using a sawed-off shotgun. They destroyed several mail pouches during the robbery, for which they were separately indicted under 18 U.S.C. § 1706 (injuring a mailbag). After the robbery, appellants removed coins, currency, and jewels valued at approximately $11,600, and disposed of the remainder of the mail in an abandoned well. Appellants went to Nevada to exchange the coins for currency, and deposited much of the money in their personal accounts. The remainder of the money was later found at a ranch owned by William Bolzer's father.

* Honorable Walter E. Hoffman, Senior United States District Judge, Eastern District of Virginia, sitting by designation.

Appellants were indicted on three counts on May 12, 1976, and a consolidated trial began on July 6. The evidence showed that appellants conducted surveillance of the postal facility at Bozeman rather than the facility at Livingston, as had been charged in the indictment. As part of its case in chief, the government called Freida Fitzhugh, Thompson's ex-wife, to testify. She identified a pair of pants which were found in the bag containing some of the stolen mail as likely belonging to Thompson.

The jury returned its verdict on July 14. Thompson and William Bolzer were found guilty on all three counts. LaRita Bolzer was found guilty on counts one and two (conspiracy and robbery). Each was sentenced to five years of imprisonment with five years parole.

### Variance

One of the overt acts alleged to have been committed in furtherance of the conspiracy was that William Bolzer and Thompson conducted surveillance of the postal facility at Livingston. The evidence at trial showed that the only surveillance conducted was of the facility at Bozeman. Appellants argue that the court should have dismissed the conspiracy count because of this variance.

■ Rule 52(a) of the Federal Rules of Criminal Procedure provides:

"Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."

This rule codifies prior case law. See Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). Thus, not every variance is fatal to an indictment. The substantial rights of the defendant must be affected. See United States v. Eaton, 501 F.2d 77, 79–80 (5 Cir. 1974); United States v. Schrenzel, 462 F.2d 765, 770 (8 Cir.), cert. denied, 409 U.S. 984, 93 S.Ct. 325, 34 L.Ed.2d 248 (1972).

This court recently explained how a defendant's substantial rights may be prejudiced. In United States v. Anderson, 532 F.2d 1218, 1227 (9 Cir.), cert. denied, 429 U.S. 839, 97 S.Ct. 111, 50 L.Ed.2d 107 (1976), we said:

"A variance between the charge of the indictment and the proof offered at trial may affect the substantial rights of a defendant in a criminal case if the effect is to prevent the defendant from presenting his defense properly, or if it takes him unfairly by surprise, or if it exposes him to double jeopardy. Where . . . the alleged variance does not have any of those effects it should not serve as a grounds for reversal."

Appellants claim that the variance in this case both caught them by surprise and prevented them from properly presenting their defense.

■ The surveillance of the post office was only one of four overt acts alleged to have been committed by the defendants in furtherance of the conspiracy. Cf. United States v. Croxton, 482 F.2d 231, 233 (9 Cir. 1973); United States v. Harris, 409 F.2d 77, 83 (4 Cir.), cert. denied, 396 U.S. 965, 90 S.Ct. 443, 24 L.Ed.2d 430 (1969). The government need not set out with precision every overt act committed. United States v. Bermudez, 526 F.2d 89, 94 (2 Cir. 1975).

Since the defendants had to be prepared to meet each of the four overt acts alleged to defeat the conspiracy count, they could not have been prejudiced by a variance as to only one of them. There is no suggestion that the place of surveillance was somehow key to the entire defense. Indeed, errors as to the time and place for certain events in an indictment have rarely been found fatal. See, e. g., United States v. Lane, 514 F.2d 22, 27 (9 Cir. 1975); United States v. Mooney, 417 F.2d 936, 938 (8 Cir.), cert. denied, 397 U.S. 1029, 90 S.Ct. 1280, 25 L.Ed.2d 541 (1969); Riley v. United States, 411 F.2d 1146, 1153 (9 Cir. 1969), cert. denied, 397 U.S. 906, 90 S.Ct. 897, 25 L.Ed.2d 87 (1970).

The government proved the commission of the other overt acts. Even if the defendants could have proven that the Bozeman facility had not been kept under surveillance, as they assert they would have done but for the variance, it would not have defeated the conspiracy count. The vari-

ance was therefore harmless. *Cf. United States v. Andrino,* 501 F.2d 1373, 1378 (9 Cir. 1974); *United States v. Jones,* 491 F.2d 1382, 1384 (9 Cir. 1974).

### Testimony of Ex-Wife

Freida Fitzhugh, Thompson's ex-wife, was called as a witness to identify a pair of pants found in a well with much of the stolen mail. She testified that the style and size of the pants matched those of the kind Thompson wore and that the patches on the pants were the type she used. Thompson claims this testimony was received in violation of the privilege for confidential marital communications.

This claim is governed by Rule 501 of the Federal Rules of Evidence, which provides in relevant part:

> "Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

*See also* Fed.R.Crim.P. 26, *as amended* (1972). We therefore must turn to federal common law to decide Thompson's claim.

■ Federal courts recognize two distinct privileges arising out of the marital relationship. The first often called the "anti-marital facts" privilege, bars one spouse from testifying against the other. *See Hawkins v. United States,* 358 U.S. 74, 75–76, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958); *Bisno v. United States,* 299 F.2d 711, 721 (9 Cir.), *cert. denied,* 370 U.S. 952, 82 S.Ct. 1602, 8 L.Ed.2d 818 (1962). This privilege does not survive the termination of the marriage and therefore does not apply in this case. *See United States v. Smith,* 533 F.2d 1077, 1079 (8 Cir. 1976); *United States v. Fisher,* 518 F.2d 836, 838 (2 Cir.), *cert. denied,* 423 U.S. 1033, 96 S.Ct. 565, 46 L.Ed.2d 407 (1972).

■ The other privilege protects confidential marital communications. It bars testimony concerning intra-spousal, confidential expressions arising from the marital relationship. *See Blau v. United States,* 340 U.S. 332, 333, 71 S.Ct. 301, 95 L.Ed. 306 (1951); *United States v. Harper,* 450 F.2d 1032, 1045 (5 Cir. 1971). Unlike the "anti-marital facts" privilege, this privilege survives the termination of the marriage. *Pereira v. United States,* 347 U.S. 1, 6, 74 S.Ct. 358, 98 L.Ed. 435 (1954); *United States v. Lewis,* 140 U.S.App.D.C. 40, 433 F.2d 1146, 1150 (1970).

■ It is well established that this privilege applies only to utterances or expressions intended by one spouse to convey a message to the other. *Pereira v. United States, supra,* 347 U.S. at 6, 74 S.Ct. 358; *United States v. Smith, supra,* 533 F.2d at 1079. Fitzhugh's testimony related only her knowledge about and observations of Thompson's pants. No communications were involved at all. *See Wolfle v. United States,* 291 U.S. 7, 16–17, 54 S.Ct. 279, 78 L.Ed. 617 (1934); *United States v. Lewis, supra,* 433 F.2d at 1150–51. Accordingly, the testimony is not barred.

### Conclusion

The judgment of the district court is AFFIRMED. Bond pending appeal is revoked forthwith.