UNITED STATES of America,
Plaintiff-Appellee,

v.

Timothy BECKER, Defendant-Appellant.

No. 82–1740.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 10, 1983.

Decided Nov. 15, 1983.

Ron Howen, Asst. U.S. Atty., Boise, Idaho, for plaintiff-appellee.

William J. Tway, Boise, Idaho, for defendant-appellant.

Before KILKENNY and FLETCHER, Circuit Judges, and JAMESON, District Judge.*

KILKENNY, Circuit Judge:

Appellant Timothy Becker appeals from his conviction on one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. We affirm.

## FACTS

On January 26, 1982, Alan Caraway, an undercover agent working for the Drug Enforcement Agency (DEA), was introduced to Scott Sirles. Caraway represented himself as a cattle buyer interested in purchasing a quantity of cocaine. Sirles agreed to sell Caraway cocaine and indicated that he had been dealing with his source for approximately one year. Sirles, however, was unable to locate appellant to make the purchase. Therefore, he sold Caraway a quantity of methamphetamine which had been obtained from appellant earlier. Sirles and Caraway agreed to arrange for a later purchase of cocaine.

On February 1, 1982, Caraway met with Sirles at a local restaurant to discuss a cocaine sale. Sirles informed Caraway that he had made the arrangements for the purchase, but would need one-half of the purchase price fronted in advance of delivery. Caraway paid Sirles and then waited while Sirles left the restaurant, under surveillance, and travelled to a nearby pizza parlor where appellant was waiting. Appellant and Sirles went into the restroom to exchange the money for cocaine. After the exchange, Sirles returned to the restaurant and, upon receiving the balance of the purchase price, delivered the cocaine to Cara-

way. Sirles then returned to appellant with the rest of the money for the cocaine.

Sirles and Caraway continued to negotiate by telephone for cocaine purchases in quarter and one-half pound quantities. These conversations were recorded by the Government. In order to test the quality of the cocaine, Sirles and Caraway arranged to meet at a local truck stop where Caraway paid Sirles $100.00 to purchase a sample of the cocaine. Sirles took the money and delivered it to appellant in exchange for the sample. Shortly thereafter, Sirles and Caraway met again at Sirles' residence. Sirles gave Caraway the cocaine and some marijuana.

After several more telephone conversations, Caraway agreed to purchase a quarter pound of cocaine from Sirles. The purchase price was set at $9,600.00. Sirles told Caraway that it would be necessary for him to purchase the first ounce for $2,400.00, after which the other three ounces would be delivered. Caraway paid Sirles $2,400.00. Sirles delivered the money to appellant who said he needed time to deliver the cocaine. However, appellant apparently had problems acquiring the cocaine and did not return with it.

Caraway demanded that the money or the cocaine be delivered. Sirles offered to give him a check for $2,400.00 and the title to his automobile until the cocaine was delivered. Caraway accepted the check. Sirles was then arrested and later released pursuant to his agreement to cooperate in the recovery of the money or the cocaine.

Approximately ten days after Sirles' arrest, appellant contacted him and told him that there were some problems and that Caraway was probably a narcotics agent. Appellant, however, did not reveal his whereabouts.

On February 22, 1982, Caraway and Sirles met with Mark Becker, appellant's brother, to attempt to locate appellant. Mark Becker was also suspicious that Caraway was a narcotics agent. Two days later,

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

Mark Becker and Sirles met at a truck stop. Becker gave Sirles a cigarette package containing pills and a package of white powder later identified as cocaine. Becker had obtained the drugs from appellant's trailer house and they were to be given to Caraway as partial payment. Sirles testified that he was unaware that Becker was going to bring the drugs to the truck stop. He also testified that Becker had not participated in any agreement between Sirles and appellant. On February 27, 1982, appellant finally delivered the balance of the cocaine and pills to Sirles. All further attempts at purchasing cocaine were futile.

The Indictment charged appellant, Sirles and Mark Becker with conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. Sirles was also charged with distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). Initially, all defendants pleaded not guilty. However, Sirles later changed his plea to guilty on the conspiracy charge. As a result, the distribution charge was dismissed. A jury trial was held as to appellant and Mark Becker on October 26, 1982. The jury returned a verdict of guilty as to both defendants.

### ISSUES

I. Whether there was sufficient evidence of a conspiracy to distribute cocaine.

II. Whether a misstatement of law made by the Government during closing argument requires reversal.

III. Whether the district court erred in instructing the jury, over the defendant's objection, on the defendant's decision not to testify or offer any evidence during the trial.

### DISCUSSION

*I. Sufficiency of the Evidence.*

Appellant contends that there was insufficient evidence of a conspiracy to distribute cocaine to overcome a motion for judgment of acquittal or to support a jury verdict of guilty.

The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is whether, after "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of the fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Bailey,* 607 F.2d 237, 243 (CA9 1979), *cert. denied,* 445 U.S. 934, 100 S.Ct. 1327, 63 L.Ed.2d 769 (1980). The essential elements of conspiracy are "an agreement to accomplish an illegal objective, coupled with one or more overt acts in furtherance of the illegal purpose and the requisite intent necessary to commit the underlying substantive offense." *United States v. Sangmeister,* 685 F.2d 1124, 1126 (CA9 1982); *United States v. Melchor-Lopez,* 627 F.2d 886, 890 (CA9 1980). In addition, the Government must prove that at least two persons were involved in the conspiracy. *Sangmeister, supra,* 685 F.2d at 1126.

It is clear that the agreement need not be explicit, but may be inferred from circumstantial evidence. *Melchor-Lopez, supra,* 627 F.2d at 891; *United States v. Thomas,* 586 F.2d 123, 132 (CA9 1978). "Once the existence of a conspiracy is established, 'evidence establishing beyond a reasonable doubt a connection of a defendant with the conspiracy, even though the connection is *slight,* is sufficient to convict him with knowing participation in the conspiracy.'" *Bailey, supra,* 607 F.2d at 243 (quoting *United States v. Dunn,* 564 F.2d 348, 357 (CA9 1977)).

We are convinced that the record contains ample evidence of a conspiracy to distribute cocaine. The Government's case relied principally upon the testimony of Scott Sirles and Alan Caraway. This testimony was, however, corroborated by physical evidence, primarily drugs exchanged between Sirles and Caraway, and testimony given by other narcotics agents who had participated in surveillance of the transactions.

The testimony, if believed, would have shown that appellant, Sirles, and perhaps Mark Becker were involved in a very sophisticated scheme for distributing cocaine. Testimony indicates that this scheme had been in existence for approximately one year. Appellant dictated the method by which "business" was conducted. Sirles was to be the only person to deal directly with the purchaser. After he located a suitable purchaser, he would contact appellant to arrange for delivery of the cocaine. Appellant would then obtain the cocaine from an unknown source. The purchaser was required to pay Sirles one-half of the purchase price prior to delivery. Sirles would take the money to appellant and make an exchange for the cocaine. After the cocaine was delivered to the purchaser, Sirles would return to appellant with the balance of the money due for the cocaine. Any difference between the price charged to the purchaser and the price charged by appellant was considered Sirles' profits. Sirles described this arrangement as a "chain reaction." Under these circumstances, there was sufficient evidence to allow the jury to find appellant guilty of conspiracy to distribute cocaine.

## II. Misstatement of Law.

Appellant contends that the Government committed reversible error during closing argument by misstating the law. The challenged statement follows:

> "The conspiracy charge stands on its own irregardless of what other charges may or may not have been brought, this is the only charge that is going to be brought against the two defendants between January 26th and February 27th. There is no retrial of these matters. Jeopardy has attached.... There is going to be one trial and one trial only between these dates. And this is it."

Appellant's objection to this statement was overruled.

■ The Government's statement correctly indicated that the conspiracy charge was separate and distinct from any other charges. However, it misstated the law when it told the jury that jeopardy had attached to prevent any retrial of the defendants. Generally, conspiracy to commit a substantive offense and the substantive offense itself are separate and distinct offenses. *Pinkerton v. United States,* 328 U.S. 640, 643, 66 S.Ct. 1180, 1181, 90 L.Ed. 1489 (1946); *United States v. Bloch,* 696 F.2d 1213, 1215 (CA9 1982). The Government may not have intended to prosecute the defendants for any substantive crimes committed during this time period. However, the conspiracy trial itself would not bar prosecution for any substantive crimes.

■ We must decide whether this misstatement of law requires reversal of appellant's conviction. Because he properly objected to the statement, we will examine the error under the harmless error rule of F.R.Crim.P. 52(a). In determining the proper standard of review, we have concluded that the misstatement did not constitute a "federal constitutional error" that would result in an automatic reversal such as violations of specific provisions of the Bill of Rights. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *United States v. Valle-Valdez,* 554 F.2d 911, 914–17 (CA9 1977). The comments constituted misconduct on the part of the Government in attempting to place into the jury's deliberations the notion that this was the only opportunity that would exist to convict the defendants for offenses that occurred during that time period. The misstatement in this case had no bearing on the elements of the offense, the burden of proof, the weight of the evidence, the credibility of the witnesses, nor any other aspect of the trial proceedings. Moreover, during opening argument appellant made special reference to the fact that other charges could be brought in state and federal court charging other crimes. Finally, we are mindful that the district court's instructions clearly indicated that the defendants were only charged with conspiracy to distribute cocaine. The evidence against the defendant was very strong. Accordingly, we hold that the misstatement did not prejudice the appellant's trial and reversal is unwarranted.

### III. Jury Instruction.

We find no merit in appellant's final contention that the district court erred in giving and repeating a cautionary instruction that the jury was not to draw any adverse inferences from defendant's decision not to testify. At oral argument, appellant properly conceded that this claim had little merit, especially considering that the co-defendant approved the instruction and refused to object.

In *Lakeside v. Oregon,* 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978), the Supreme Court held that giving such a cautionary instruction, even over a defendant's objection, did not violate the fifth and fourteenth amendments. The Court emphasized that the very purpose of the instruction was to remove from the jury's deliberations any influence of unspoken adverse inferences. *Id.* at 339, 98 S.Ct. at 1094. The instruction in this case served to protect the co-defendant as well as the appellant. We hold that the district court was well within its discretion in giving and repeating the cautionary instruction here.

### CONCLUSION

The judgment of the district court is AFFIRMED.