857 F.2d 1480
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 UNITED STATES of America, Plaintiff-Appellee,
v.
Sami YERLI, aka: Sami Shefik Defendant-Appellant.
 No. 86-5293.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 1, 1988.
Decided Sept. 12, 1988.
 Before FLETCHER, CANBY and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Sami Yerli appeals from his conviction of one count of conspiracy to possess with intent to distribute a controlled substance in violation of 21 U.S.C. Sec. 846, and two counts of unlawful use of a communication facility in violation of 21 U.S.C. Sec. 843(b). We affirm.
 
 FACTS
 
 3
 Yerli's challenge to the sufficiency of the evidence to connect him to a drug conspiracy requires us to examine the facts in some detail. In October of 1983, Ali Akensel attended his brother Billy's wedding in Los Angeles, California. Billy Akensel was marrying the sister of the co-defendant in this case, Pablo Penuela. During the course of Ali Akensel's visit to Los Angeles, he had several conversations with Penuela. Penuela told Akensel that he was in the narcotics business and could supply Akensel with any quantity of narcotics. Akensel requested and received a loan from Penuela for $15,000.
 
 
 4
 In December of 1985, Akensel was arrested in New York by the Nassau County Police Department and charged with possession of narcotics. Following his arrest, Akensel began cooperating with the police department and became a confidential informant.
 
 
 5
 In January of 1986, Penuela contacted Akensel and asked him to repay the $15,000 loan. Akensel told Penuela that he did not have the money but had a friend who was interested in buying cocaine. Akensel called the Nassau County police officers, who installed a recording device on Akensel's telephone. In the next couple of months, Penuela and Akensel had numerous telephone conversations regarding a possible cocaine deal.
 
 
 6
 In February of 1986, Akensel made several phone calls to appellant Sami Yerli, who was living in Los Angeles. Yerli and Akensel were from the same area of Cyprus and were family friends. It was in the course of these conversations that the subject of the cocaine deal between Penuela and Akensel first came up. Yerli told Akensel that he could get him the cocaine for a better price than what Penuela was offering, and agreed to call him back with more information.
 
 
 7
 Akensel and Yerli had three more telephone conversations on April 24th and 25th, 1986. Akensel tape recorded all of these conversations. In the first phone conversation, Yerli agreed to get the cocaine from Penuela and quoted a price of $27,000-$30,000 per kilogram. He also said that with a week's notice he could have the cocaine ready for pickup. In the second call, Yerli told Akensel that he had contacted Penuela, and that Penuela and Yerli would call Akensel later that night. Yerli said that he had "made" Penuela agree to forgive Akensel's loan, and that Penuela would go down to $31,000 per kilogram. Yerli also told Akensel to insist that Yerli be present for the deal. The third call consisted for the most part of a discussion between Penuela and Akensel, after which Yerli got on the line and assured Akensel that everything was fine and not to worry.
 
 
 8
 After a number of other phone conversations between Akensel and Penuela, Akensel flew to New York with three officers from the Nassau County Police Department to buy the five kilograms of cocaine.
 
 
 9
 On May 2, 1986, undercover officers arrested co-defendants Penuela and Jose Rodrigo Vasquez after Vasquez showed the undercover officer approximately five kilograms of cocaine. Vasquez consented to a search of his apartment, where police officers discovered approximately 30 kilograms of cocaine and other related evidence. The officers arrested co-defendant Gustavo Arias Gomez, who was present at the apartment.
 
 
 10
 On June 6, 1986, officers arrested Yerli. Yerli subsequently waived his Miranda rights, and told the officers that he had set up the cocaine deal and that it would never have gone through without him.
 
 
 11
 Yerli and the other defendants were indicted on June 17, 1986. The indictment charged Yerli with conspiracy to possess cocaine with the intent to distribute (Count 1), possession of cocaine with intent to distribute (Counts 12 and 13), and using a telephone to facilitate a narcotics transaction (Counts 6, 7 and 9). Yerli pled not guilty to all of the charges, and on July 24th his trial commenced.
 
 
 12
 On July 31, 1986, Yerli moved for a judgment of acquittal after the government's case in chief. The court granted Yerli's motion as to Count 6, but denied his motion as to the remaining counts.
 
 
 13
 On August 14, 1986, Yerli was found guilty on Counts 1, 7 and 9, and not guilty on Counts 12 and 13. Yerli was sentenced on October 7, 1986, to a $10,000 fine and a term of six years for Count 1 and two years for each of Counts 7 and 9, these last two to run concurrently with each other and with Count 1. The court also ordered Yerli to pay a special assessment of $50.00 per count for a total of $150.00. Yerli timely appeals.
 
 DISCUSSION
 I. Standard of Review
 
 14
 In determining whether a jury verdict rests on sufficient evidence, the reviewing court must view the evidence in the light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original), reh'g denied, 444 U.S. 890 (1979); Glasser v. United States, 315 U.S. 60, 80 (1942). It is the function of the jury to determine the credibility of witnesses, to resolve evidentiary conflicts, and to draw reasonable inferences from proven facts. We must assume that the jury resolved all such matters in a manner which would support the verdict. United States v. Barham, 466 F.2d 1138, 1140 (9th Cir.1972); and United States v. Nelson, 419 F.2d 1237, 1241 (9th Cir.1969).
 
 
 15
 II. Sufficiency of Evidence for Conspiracy Conviction
 
 
 16
 Yerli first contends that there is insufficient evidence to sustain his conviction for conspiracy under 21 U.S.C. Sec. 846. In order to establish the existence of a conspiracy, the government must show an agreement to accomplish an illegal objective coupled with one or more acts in furtherance of the illegal purpose and the requisite intent necessary to commit the underlying offense. See United States v. Becker, 720 F.2d 1033, 1035 (9th Cir.1983); United States v. Melchor-Lopez, 627 F.2d 886, 890 (9th Cir.1980). It is not necessary to prove direct contact between co-conspirators or the existence of a formal agreement. The agreement may be inferred from the acts of the parties and other circumstantial evidence indicating concert of action for accomplishment of a common illegal purpose. United States v. Everett, 692 F.2d 596, 601 (9th Cir.1982), cert. denied, 460 U.S. 1051 (1983); Melchor-Lopez, 627 F.2d 886, 891.
 
 
 17
 The evidence regarding Yerli's connection to the conspiracy consists of the three tape-recorded telephone calls that took place between Yerli and Akensel in April of 1986. Yerli contends that these calls do not evidence any agreement between him and Penuela. He argues that no such agreement was ever reached, because although he made several proposals to Penuela, none was accepted.
 
 
 18
 In the case of United States v. Melchor-Lopez, we held that a defendant could not be convicted of conspiracy when the parties involved made several proposals but failed to reach a final agreement. A significant factor of the case, however, was that the defendant's own objections to various proposals prevented agreement. In the present case, by contrast, Yerli indicated a willingness to go through with the deal at all times, although some of his proposals were rejected or ignored by the other parties. Agreement on the overall objective of the conspiracy was not precluded. Melchor-Lopez is therefore not controlling. See United States v. Sharif, 817 F.2d 1375, 1378 (9th Cir.1987).
 
 
 19
 The evidence is admittedly thin in this case, but sufficient that a reasonable juror could conclude beyond a reasonable doubt that Yerli was involved in the conspiracy. "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser, 315 U.S. at 80. Once the existence of a conspiracy is shown, "evidence establishing beyond a reasonable doubt a connection of a defendant with a conspiracy, even though the connection is slight, is sufficient to convict him with knowing participation in the conspiracy." Becker, 720 F.2d at 1035 (emphasis in original).
 
 
 20
 Here the jury heard tape recorded conversations in which Yerli discussed such particulars as prices and delivery dates with Akensel, and indicated that he was in close contact with Penuela and had dealt with Penuela before. Based on this and other evidence, a rational jury could find that Yerli implicitly had agreed with Penuela to further the sale of cocaine to Akensel. Viewing the evidence in the light most favorable to the government, we find that there was sufficient evidence to sustain Yerli's conviction for conspiracy.
 
 III. Use of Telephone to Facilitate
 
 21
 Yerli also challenges the sufficiency of the evidence with regard to his conviction under 21 U.S.C. Sec. 843(b). In order to prove a violation under 21 U.S.C. Sec. 843(b), the Government must show (1) knowing or intentional (2) use of a communication facility (3) to aid or facilitate the felonious distribution of narcotics. United States v. Whitten, 706 F.2d 1000, 1006 (9th Cir.1983). The facilitation element is proved by a showing that the telephone call comes within the common meaning of facilitate, that is, to make easier or less difficult, or to assist or aid. United States v. Phillips, 664 F.2d 971, 1032 (5th Cir.1981).
 
 
 22
 Yerli argues that in light of the numerous negotiations between Penuela and Akensel that took place after April 25, 1986, it is impossible to conclude that any of the telephone conversations between Yerli and Akensel facilitated the possession of cocaine. The remoteness of Yerli's phone conversations from the eventual narcotics delivery is immaterial if the conversations facilitated the eventual offense. Nor is it material that Yerli himself was not involved in the actual distribution or possession. Knowing and intentional use of the telephone to facilitate another person's offense is sufficient to uphold a conviction under Sec. 843(b). United States v. Rey, 641 F.2d 222, 225 n. 6 (5th Cir.1981).
 
 
 23
 Yerli characterizes his telephone conversations with Akensel as little more than discussions about Penuela, or assurances by Yerli that everything would be all right. However, in light of the fact that Yerli quoted prices, engaged in minor negotiations, brought Akensel and Penuela together, and later admitted the deal would not have succeeded without him, a rational trier of fact could find that Yerli's calls to Akensel had facilitated the distribution of cocaine that eventually resulted from the deal.
 
 IV. Overt Act Number Seven
 
 24
 Yerli argues that there is no evidence to support overt act seven of the indictment, and that the court's failure to strike the act requires reversal. As to act seven, the indictment states that on or about April 25, 1986 Yerli and Penuela had a telephone conversation with Akensel, in the course of which Penuela said the price of cocaine could come down to $31,000 per kilogram, and Yerli said that with five to six day's notice there would be no problem obtaining five kilograms of cocaine. It is true that nothing in the evidence indicates that Yerli made such a statement during this phone call, although there is evidence he made this statement in an earlier call. The question remains as to whether the failure to strike was so prejudicial as to require reversal.
 
 
 25
 In order to constitute grounds for reversal, a variance between the charge of the indictment and proof offered at trial must affect the substantial rights of a defendant by preventing him from presenting his defense properly, taking him unfairly by surprise, or exposing him to double jeopardy. United States v. Bolzer, 556 F.2d 948, 950 (9th Cir.1977); United States v. Anderson, 532 F.2d 1218, 1227 (9th Cir.1976). Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. See Fed.R.Crim.P. 52(a). Errors as to the time and place for certain events in an indictment rarely have been found fatal. See, e.g., United States v. Lane, 514 F.2d 22, 27 (9th Cir.1975).
 
 
 26
 Yerli maintains that in this case the error as to the time of his statement is crucial, because the overt act first puts Penuela and Yerli together discussing the sale of cocaine. Yerli's statement regarding the 5-6 day notice was in fact made during a phone conversation that did not include Penuela. However, in other conversations, Yerli, himself, admitted conversations with Penuela. A rational jury could still conclude beyond a reasonable doubt that Penuela and Yerli had discussed the cocaine sale. Among the elements required to support a conspiracy conviction is proof of at least one overt act in furtherance of the illegal purpose. United States v. Oropeza, 564 F.2d 316, 321 (9th Cir.1977). The government need not set out with precision every overt act committed. United States v. Bermudez, 526 F.2d 89, 94 (2nd Cir.1975).
 
 
 27
 The present case is similar to that of United States v. Bolzer, 556 F.2d 948 (9th Cir.1977). In Bolzer one of the four overt acts in the indictment was unsupported by any evidence at trial. The court refused to reverse, noting that the defendants had to be prepared to meet each of the four alleged overt acts in order to defeat the conspiracy count, and that the defendants therefore could not have been prejudiced by a variance as to only one of the acts. Id. at 950. Yerli similarly had to defend against all of the overt acts alleged to defeat the conspiracy charge against him. The variance as to overt act seven is not so prejudicial as to require reversal in this case.
 
 V. Entrapment
 
 28
 Yerli contends that Akensel's conduct constitutes entrapment as a matter of law. In order to establish entrapment, a defendant must show: (1) that he was induced to commit the crime by a government agent; and (2) that he was not otherwise predisposed to commit the crime. United States v. Busby, 780 F.2d 804, 806 (9th Cir.1986); United States v. Rhodes, 713 F.2d 463, 467 (9th Cir.1983). The trial court will instruct on entrapment only if the defendant presents some evidence of both elements of the entrapment defense. Busby, 780 F.2d at 806. Once the two elements of entrapment are in issue, the government has the burden of showing beyond a reasonable doubt that there was no entrapment. Notaro v. United States, 363 F.2d 169, 175 (9th Cir.1966).
 
 
 29
 The factors that must be considered in determining whether the defendant was predisposed to commit the crime are: (1) the character or reputation of the defendant, including any prior criminal record; (2) whether the suggestion of the criminal activity was initially made by the government; (3) whether the defendant was engaged in the criminal activity for profit; (4) whether the defendant evidenced reluctance to commit the offense, overcome only by repeated government inducement or persuasion; and (5) the nature of the inducement or persuasion supplied by the government. United States v. Reynoso-Ulloa, 548 F.2d 1329, 1336 (9th Cir.1977). While none of these factors alone is sufficient to indicate the presence or absence of predisposition, the most important factor is whether the defendant evidenced reluctance to engage in criminal activity which was overcome by repeated government inducement. Id. Entrapment will not be found merely because the government instigated the criminal activity. Id. at 1336 n. 10. It is only when the government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play. United States v. Russell, 411 U.S. 423, 436 (1973).
 
 
 30
 The primary evidence in this case with respect to entrapment is the conflicting testimony of Yerli and Akensel. Yerli testified that Akensel called Yerli five or six times in February of 1986 seeking assistance in procuring cocaine. Yerli claims that he initially attempted to put Akensel off, but that he eventually agreed to Akensel's requests when Akensel threatened to inform Turkish authorities that Yerli had a Greek passport. Akensel, on the other hand, testified that it was Yerli who initially brought up the subject of narcotics during a casual telephone conversation. According to Akensel's testimony, Yerli told Akensel he knew Akensel was trying to obtain five kilograms of cocaine from Pablo Penuela, and that he, Yerli, could get it for a better price and deliver it to New York.
 
 
 31
 In cases where there is a definite conflict between the testimony of the government informant and the defendant, the resolution of fact relevant to the entrapment issue is a credibility question for the jury. See United States v. Griffin, 434 F.2d 978, 981 (9th Cir.1970). In Notaro v. United States, 363 F.2d 169 (9th Cir.1966), we declined to overturn a jury's finding that there was no entrapment, despite the fact that the trial judge himself had expressed a leaning toward the opposite conclusion. The court stated "the credibility of [each witness] was put in question, and their demeanor and attitude, not observable to us here, was subject to scrutiny by both the judge and jury. When, as here, the result of the trial was so dependent upon the conflicting testimony of two witnesses ... we cannot bring ourselves to interfere." Id. at 173. Here, as in Notaro, the demeanor and credibility of each of the witnesses was subject to the scrutiny of the district court judge and the jury. The jury was clearly unconvinced that Yerli lacked the predisposition to commit the crime.
 
 
 32
 Aside from the testimony of Akensel and Yerli, the only evidence of entrapment is the tape recorded phone conversations between Yerli and Akensel. Although these conversations do evidence some reluctance on the part of Yerli to deal with Penuela, they do not show Yerli to be unwilling to become involved in narcotics dealing in general. Indeed, Yerli himself insisted in the phone conversation of April 24 that he be present at the time of the deal.
 
 
 33
 We conclude that a rational jury could find from the evidence adduced at trial that Yerli was predisposed to become involved in the narcotics conspiracy, and that he was not entrapped by Akensel.
 
 
 34
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the Courts of this Circuit except as provided by Circuit Rule 36-3