979 F.2d 856
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charles Ellis BLACK, aka: Charles Black; and Donald Lee
Young, aka: Robert Wilson, Defendants-Appellants.
 Nos. 90-50523, 90-50528.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 5, 1992.*
Decided Nov. 17, 1992.
 
 Before JAMES R. BROWNING, DAVID R. THOMPSON and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Charles Black appeals from his conviction of conspiring to distribute cocaine, 21 U.S.C. § 846, possessing cocaine with the intent to distribute, 21 U.S.C. § 841(a)(1), and using and carrying a firearm during a drug crime, 18 U.S.C. § 924(c)(1), and from his sentence. Donald Young appeals from his conviction on the conspiracy and possession counts. We affirm. The facts are set out at length because several of the issues are quite fact-specific.
 
 
 3
 II. Facts.
 
 
 4
 On December 20, 1989, Daniel Wu negotiated for a purchase of 42 kilos of cocaine from Ana Penalosa, an undercover officer, but did not reach an agreement. They parted with the understanding that Penalosa would call Wu the next day. Immediately afterward, Wu drove to a shopping center parking lot and met Black. They talked for five minutes, then drove in separate cars to Wu's apartment. Wu entered the building, but Black remained in his car for five to ten minutes looking in the rearview mirror. He then entered the building.
 
 
 5
 The police decided to watch Wu's apartment. In the morning, Wu drove to an office building, and was later picked up by Black. Officer Scott Moore, who was following Wu, noticed a blue Pontiac trailing Black, and concluded that the blue Pontiac was on countersurveillance duty. Both cars then drove to Wu's apartment. The blue Pontiac, driven by Young and Keith Wheeler, entered the garage. Wu and Black met Young and Wheeler in the garage, and Wu, Young and Wheeler each carried a bag from the blue Pontiac to the elevator. Black walked slightly behind the three, with his right hand in the small of his back, looking around the garage.
 
 
 6
 A few minutes later, Wu returned to the garage, and a Blazer drove in. The Blazer was driven by Michelle Ochoa and Estelle Cabrera. Cabrera and Wu looked in the Blazer, and then walked to the elevator. A short while later, Wu, Black, Young, Wheeler and Cabrera reentered the garage and walked to the Blazer. Young and Wheeler picked up a heavy cardboard box from the Blazer, and the six of them then returned to the elevator.
 
 
 7
 About 30 minutes later, Young and Wheeler reentered the garage carrying the same cardboard box, and put it in the trunk of the blue Pontiac. Black and Wu accompanied them, and Black helped close the lid of the trunk. Wu, Young and Wheeler then returned to the elevator, but Black stayed behind to investigate a noise before joining them.
 
 
 8
 At about 11:00 a.m., Penalosa called Wu to try again to arrange a deal. Wu told her that he was in the process of getting merchandise from someone else. A few hours later, Wu, Black, Young and Wheeler reentered the garage. Young and Wheeler got into the Pontiac and drove away. Black, carrying a black duffel bag, walked out of the garage.
 
 
 9
 Officers Harry Smith and Ken Gunn followed the Pontiac for about one mile. They were told that the occupants were possibly armed. Another car pulled the Pontiac over, and the four officers approached the car with their guns drawn. They told Young and Wheeler to get out of the car, forced them to lie face down on the sidewalk while being handcuffed, and then sat them down on the curb. This took only about one minute, and the officers had reholstered their weapons by the time Young and Wheeler were seated.
 
 
 10
 Smith told Young and Wheeler that he wanted their permission to search the car, but that they did not have to consent. Young and Wheeler both told him to go ahead and search. The agents found the cardboard box, which contained 41 kilos of cocaine. Young and Wheeler were then arrested.
 
 
 11
 Meanwhile, Officer Moore spotted Black's car as it was leaving the garage. He was told that the car was involved in possible narcotics transactions at the apartment, and that one of the participants was armed. An L.A. Sheriff's unit made the stop, and Moore and one other unmarked unit were there as back-up. All four officers were armed, and three of them had their weapons drawn at the time of the stop. The two sheriff's deputies approached the vehicle with guns drawn, told Black to get out, and brought him over to the curb. Moore handcuffed him, and patted him down. The officers then holstered their weapons, and Moore started talking to Black. Moore asked Black some questions about the car, and Black told him that he got it from a Colombian and was supposed to drop it off down the street. Moore then asked Black if he could search the car, and Black said yes. Moore then removed Black's handcuffs so he could sign a consent form.
 
 
 12
 Wu, Ochoa and Cabrera were arrested as well. They were all indicted on various charges on January 16, 1990. Black was indicted on charges of conspiring to distribute cocaine, 21 U.S.C. § 846, possession of cocaine with the intent to distribute, 21 U.S.C. § 841(a)(1), and using and carrying a firearm during a drug crime, 18 U.S.C. § 924(c)(1). Young was indicted on the conspiracy and possession counts. They were both convicted, and timely appealed.
 
 
 13
 II. Black's Motion to Suppress.
 
 
 14
 Black moved to suppress all the evidence seized from his car and all the statements he made to police following the stop, on the grounds that (1) he was arrested without probable cause, and (2) he was interrogated without having been given Miranda warnings. The district court denied the motion, on the ground that the stop did not constitute an arrest. We review the question of whether an arrest occurred de novo. United States v. Alvarez, 899 F.2d 833, 836 (9th Cir.1990), cert. denied, 111 S.Ct. 671 (1991).
 
 
 15
 A. Arrest or Investigatory Detention?
 
 
 16
 Black was not formally arrested until after the officers were told that 41 kilos of cocaine had been found in Young's car. Nevertheless, Black argues that the investigatory detention ripened into an arrest before the police had probable cause to arrest him.
 
 
 17
 An investigatory stop becomes an arrest, which may only be made on the basis of probable cause, if, "in view of all the circumstances, a reasonable person would believe himself to be under arrest." United States v. Robertson, 833 F.2d 777, 780-82 (9th Cir.1987). However, without arresting an individual, "a police officer may take reasonable measures to neutralize the risk of physical harm." United States v. Alvarez, 899 F.2d 833, 838 (9th Cir.1990). The question whether Black was arrested is quite close, because the forcible restraint was clear, but the officers had been informed that one of the subjects was armed, so they had reason to draw their guns and use handcuffs even if they were not arresting Black.
 
 
 18
 In United States v. Greene, 783 F.2d 1364, 1367-68 (9th Cir.), cert. denied, 476 U.S. 1185 (1986), we held that the officers did not convert a stop into an arrest by ordering the defendants from their car at gunpoint because an informant had seen a pistol in one of the defendants' motel room. In United States v. Taylor, 716 F.2d 701, 707-09 (9th Cir.1983), the officers ordered the defendants from the car at gunpoint, and handcuffed one while making him lie face down in a ditch. We held that this did not convert the stop into an arrest, because the officers had been informed that the defendants were dangerous, and there were two suspects and only two or three officers on the scene.
 
 
 19
 We conclude that the stop became an arrest, at least after the pat-down search revealed no weapons, because Moore did not remove the cuffs. United States v. Del Vizo, 918 F.2d 821, 824-25 (9th Cir.1990). But cf. United States v. Bautista, 684 F.2d 1286, 1289-90 (9th Cir.1982), cert. denied, 459 U.S. 1211 (1983).
 
 
 20
 B. Probable Cause.
 
 
 21
 A warrantless arrest is valid only if supported by probable cause. United States v. Hoyos, 892 F.2d 1387, 1392 (9th Cir.1989), cert. denied, 111 S.Ct. 80 (1990). Probable cause exists if
 
 
 22
 the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a prudent person to believe a suspect has committed, is committing, or is about to commit a crime. The experience and expertise of the officers involved in the investigation and arrest may be considered in determining probable cause.... Probable cause may be based on the collective knowledge of all of the officers involved in the investigation and all of the reasonable inferences that may be drawn therefrom.
 
 
 23
 Id. (citations omitted).
 
 
 24
 When Black was seized, the officers had sufficient knowledge to warrant a prudent person to think that Black was participating in a transaction in narcotics. No other explanation suggested itself for his perambulations with Wu and the others at Wu's building. Wu had, the day before, attempted to buy 42 kilograms of cocaine from Penalosa, and Wu told Penalosa that he was buying narcotics from someone else during his transactions with Black and the others. See United States v. Rodriguez, 869 F.2d 479, 482-83 (9th Cir.1989).
 
 
 25
 C. Miranda Warnings.
 
 
 26
 If Black was not arrested, then there was no need for Miranda warning before he was questioned. But our resolution of the close question of whether he was arrested implies that Black should have been given Miranda warnings before he was interrogated by the police. Miranda v. Arizona, 384 U.S. 436, 444 (1966). He was not. Officer Moore asked Black whether he owned the car, where he got it from, and where he was supposed to drop it off. These questions were reasonably likely to elicit an incriminating response. The district court should have excluded the responses at trial. United States v. Gonzalez-Sandoval, 894 F.2d 1043, 1047 (9th Cir.1990).
 
 
 27
 Nevertheless, admission of the statements was harmless error. Id. The erroneously-admitted statements were of slight inculpatory value. The testimony of Officer Ortiz, who observed Black's meeting with Wu on December 20 and the activities in the garage on the 21st, and of Officer Moore, who found the guns, established Black's complicity so plainly that a jury could not have had its decision affected by the erroneously admitted statements.
 
 
 28
 III. Young's Motion to Suppress.
 
 
 29
 Young argues that the district court's factual findings that he consented to the search, and that Officer Moore was more credible than he, were incorrect. We review the district court's factual findings in a suppression hearing for clear error. United States v. Vasquez, 858 F.2d 1387, 1391 (9th Cir.1988), cert. denied, 488 U.S. 1034 (1989). We must accept the district court's findings unless we have "a definite and firm conviction that a mistake has been committed." United States v. Ramos, 923 F.2d 1346, 1356 (9th Cir.1991). We give special deference to the district court's credibility findings. Id. We review the district court's finding that Young consented to the search for clear error. United States v. Castillo, 866 F.2d 1071, 1082 (9th Cir.1988).
 
 
 30
 Young's contention that the district court clearly erred when it chose to believe Smith is meritless. Smith's testimony was internally consistent and was consistent with the declarations filed by him and Officer Gunn. The only additional material fact elicited from Smith on cross-examination was that Young was forced to lie prone for approximately one minute while he was being handcuffed. Young's testimony conflicted with Smith's in several important respects, but this is not enough to show that the judge clearly erred when he decided to believe Smith rather than Young. Vasquez, 858 F.2d at 1391. The court's finding of voluntariness was in accord with the criteria of United States v. Castillo, 866 F.2d 1071, 1082 (9th Cir.1988).
 
 
 31
 IV. Sufficiency of the Evidence.
 
 
 32
 The evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements beyond a reasonable doubt. United States v. Becker, 720 F.2d 1033, 1035 (9th Cir.1983).
 
 
 33
 A. Conspiracy.
 
 
 34
 The elements of conspiracy are an agreement to accomplish an illegal objective, one or more overt acts in furtherance of the illegal purpose, and the requisite intent necessary to commit the underlying offense. Id. The agreement need not be explicit, and may be inferred from circumstantial evidence. Id. Once the existence of a conspiracy has been shown, evidence establishing beyond a reasonable doubt the defendant's connection with the conspiracy, even if the connection is slight, is sufficient to support a conviction. Id.
 
 
 35
 There is sufficient evidence to support Black's conviction of conspiracy. Black met with Wu immediately after Wu's attempt to buy cocaine from Penalosa, followed Wu back to Wu's apartment, and conducted countersurveillance activities before entering the apartment building. The next day, Black drove Wu around while being followed by a countersurveillance vehicle, watched the garage while bags and a cardboard box were unloaded and carried up to Wu's apartment, and helped load the cardboard box into the Pontiac. Officer Ortiz testified that Black was playing the role of a lookout, whose job it is to warn the transactors of any problems. The police seized two guns and some money from Black's car, and the money was bundled in the same manner as was the money seized from the Blazer and Wu's apartment. This evidence is sufficient to support a reasonable conclusion that Black agreed to possess cocaine with the intent to distribute it, that he performed overt acts in furtherance of this agreement, and that he had the intent to possess the cocaine with the intent to distribute it.
 
 
 36
 B. Possession with Intent to Distribute.
 
 
 37
 Black argues that there was insufficient evidence to convict him of the possession count, because there was no evidence that he physically possessed the cocaine or directed others to possess the cocaine. A conspirator may be found guilty of a substantive count on the basis of acts of his coconspirators committed in furtherance of the conspiracy. United States v. Testa, 548 F.2d 847, 855 (9th Cir.1977); Pinkerton v. United States, 328 U.S. 640 (1946). There is sufficient evidence to support the conspiracy conviction, so Black is guilty because Wheeler and Young possessed the cocaine, and he conspired with them for the possession. We need not reach the government's alternative theory of constructive possession.
 
 
 38
 C. Possession of a Gun in Relation to a Drug Transaction.
 
 
 39
 Under 18 U.S.C. § 924(c)(1), anyone who uses or carries a gun during and in relation to any drug trafficking crime is subject to enhanced penalties. Black argues that there is insufficient evidence to convict him of the gun count, because there was no evidence that he knew the guns were in the bag, or that the possession of the guns related to the drug trafficking.
 
 
 40
 The jury could infer that Black knew the guns were in the bag from Ortiz's testimony that he left the garage with a bag that resembled the bag the guns were found in. Black's possession of the guns and apparent conduct as a lookout, including walking behind the others with his right hand in the small of his back, is sufficient to show that the possession of the guns related to the drug transaction. Cf. United States v. Power, 881 F.2d 733, 736-37 (9th Cir.1989). The statutory element is satisfied if "the firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge in fact occurred." Id. at 737 (emphasis in original) (citation omitted). The jury could infer that Black possessed the two guns in relation to the drug transaction.
 
 
 41
 V. The Deliberate Ignorance Instruction.
 
 
 42
 The district court instructed the jury that guilty knowledge could be inferred from a "conscious purpose to avoid enlightenment." We review the district court's decision with respect to the jury instructions for abuse of discretion. United States v. Wauneka, 842 F.2d 1083, 1088 (9th Cir.1988).
 
 
 43
 The court may give a deliberate ignorance instruction only if "the defendant claims a lack of guilty knowledge and the proof at trial supports an inference of deliberate ignorance." United States v. Alvarado, 838 F.2d 311, 314 (9th Cir.), cert. denied, 487 U.S. 1222 (1988). The instruction "is appropriate only when the defendant purposely contrives to avoid learning all the facts, as when a drug courier avoids looking in a secret compartment he sees in the trunk of a car, because he knows full well that he is likely to find drugs there." United States v. Mapelli, 971 F.2d 284, 286 (9th Cir.1992). The instruction "should not be given in every case where a defendant claims lack of knowledge, but only in those comparatively rare cases where, in addition, there are facts that point in the direction of deliberate ignorance." United States v. Sanchez-Robles, 927 F.2d 1070, 1073 (9th Cir.1991).
 
 
 44
 There was overwhelming circumstantial evidence, though no direct evidence, that Black knew they were obtaining possession of narcotics for sale. But evidence of actual knowledge does not allow for the instruction; there must be evidence of willful blindness. Mapelli at 286. There was none, so it was error to give the instruction.
 
 
 45
 The error, though, was harmless. The error is harmless if "evidence of guilt is so overwhelming that a conviction is compelled." Alvarado, 838 F.2d at 317. The evidence of Black's guilty knowledge consisted of (1) his countersurveillance conduct, which led Ortiz to opine that he was a lookout, and (2) more generally, his participation in every phase of the scheme from the meeting with Wu to the loading of the cocaine in the Pontiac. Unlike Mapelli, scienter was not critical to the case, and the prosecutor did not find it necessary to use the instruction in his argument to the jury.
 
 
 46
 VI. Black's Sentence: The Role in the Offense Adjustment.
 
 
 47
 The district court declined to adjust Black's sentence downward to account for his role in the offense. Whether a defendant is a minor or minimal participant is a factual question reviewed for clear error. United States v. Sanchez, 908 F.2d 1443, 1448-49 (9th Cir.1990). Black had the burden of proof by a preponderance of the evidence. Id. at 1449.
 
 
 48
 Under section 3B1.2 of the guidelines, a defendant's sentence should be reduced by 4 points if he was a minimal participant, by 2 points if he was a minor participant, and by 3 points if he falls somewhere in between. The commentary says that a minimal participant is someone who is "plainly among the least culpable of those involved in the conduct" of the group, and that "lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant." U.S.S.G. § 3B1.2 app. n. 1. A minor participant is someone "who is plainly less culpable than most other participants." U.S.S.G. § 3B1.2 app. n. 3.
 
 
 49
 We cannot say that the trial judge's determination not to make these adjustments was clearly erroneous. While Black may have been less culpable than Wu, he was not "plainly" less culpable than Young, Wheeler, Ochoa and Cabrera, who apparently assisted in delivery while Black provided armed security. A defendant is not entitled to a minor or minimal participant reduction just because some other participants were arguably more culpable. United States v. Rexford, 903 F.2d 1280, 1283 (9th Cir.1990).
 
 
 50
 The district court's determination that he did not merit a reduction under § 3B1.2 was not clearly erroneous.
 
 
 51
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds United States v. Donald Lee Young, No. 90-50528, suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3