**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Velda MAPELLI, Defendant–Appellant.**

**No. 90–10619.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 1991.

Decided July 24, 1992.

Richard A. Wright, Wright & Stewart, Las Vegas, Nev., for defendant-appellant.

Camille W. Chamberlain and J. Gregory Damm, Asst. U.S. Attys., Las Vegas, Nev., for plaintiff-appellee.

Before: BOOCHEVER, NORRIS and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

Velda Mapelli was convicted of income tax evasion. She appeals on two grounds, arguing that the district court erroneously gave a deliberate ignorance instruction to the jury, and that the court erred in denying her motion to disqualify prosecutors who had been exposed to testimony she gave in another proceeding subject to a grant of use immunity. We agree with both contentions and reverse.

## I. Procedural Background

Defendant Velda Mapelli and her husband Eugene Mapelli owned ninety percent of the stock of Mapelli Meat Company of Las Vegas, Ltd. during the tax years at issue. Mr. Mapelli served as president, and Mrs. Mapelli as secretary-treasurer. Their former son-in-law, John Beuchat, owned the remaining ten percent and served as vice president. An Internal Revenue Service investigation revealed that cash income was being skimmed from the corporation without being reported on the corporate records or tax returns.

In June 1988, a federal grand jury indicted the Mapellis and Beuchat for attempting to evade or defeat tax, in violation of 26 U.S.C. § 7201. In October 1989, the Mapellis each pleaded guilty to one count of attempting to evade or defeat income tax. While awaiting sentencing, both were subpoenaed to testify at Beuchat's trial several weeks later. Mr. Mapelli testified, but Mrs. Mapelli refused, invoking her Fifth Amendment privilege against self-incrimination. The district court then ordered Mrs. Mapelli to testify under a grant of use immunity pursuant to 18 U.S.C. § 6002. She complied with the order and testified under the examination of Assistant United States Attorneys Gregory Damm and Camille Chamberlain. On November 1, 1989, Beuchat was acquitted.

Mrs. Mapelli moved to withdraw her guilty plea, and the district court granted the motion. Prior to trial, she moved to disqualify Damm and Chamberlain from prosecuting her case. This motion was denied.

Mrs. Mapelli was tried in August 1990, with Damm and Chamberlain prosecuting for the United States. Mr. Mapelli testified that he had devised the scheme to skim cash proceeds from meat sales before they were recorded as gross receipts for income tax purposes. He asserted that while Mrs. Mapelli and other employees knew that different procedures were used for handling cash and charge sales, he alone knew that the procedures were being used to skim cash out of the business without paying taxes, and Mrs. Mapelli knew nothing about the skimming until the day he received his indictment. The jury returned verdicts of guilty on all seven counts of tax evasion in the indictment and Mrs. Mapelli now appeals.

## II. Deliberate Ignorance Instruction

The deliberate ignorance instruction incorrectly diluted the government's duty to prove knowledge. Mrs. Mapelli's defense was that she lacked knowledge of the scheme to omit cash income from Mapelli Meat tax returns. The district court, over Mapelli's objection, gave the following jury instruction:

The element of knowledge may be satisfied by inference drawn from proof that a defendant deliberately closed her eyes to what would otherwise have been obvious to her. A finding beyond a reasonable doubt of a conscious purpose to avoid enlightenment would permit an inference of knowledge. Stated another

way, a defendant's knowledge of a fact may be inferred from willful blindness to the existence of the fact.

It is entirely up to you as to whether you find any deliberate closing of the eyes, and the inference to be drawn from any such evidence. A showing of negligence or mistake is not sufficient to support a finding of willfulness or knowledge.

 A deliberate ignorance instruction, sometimes called a *Jewell* instruction, is appropriate only when the defendant purposely contrives to avoid learning all the facts, as when a drug courier avoids looking in a secret compartment he sees in the trunk of a car, because he knows full well that he is likely to find drugs there. *See United States v. Jewell,* 532 F.2d 697, 698–99 (9th Cir.) (en banc), *cert. denied,* 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976). "It is not enough that the defendant was mistaken, recklessly disregarded the truth or negligently failed to inquire." *United States v. Kelm,* 827 F.2d 1319, 1324 (9th Cir.1987) (citation omitted). The instruction enables the jury to deal with willful blindness, where a person suspects a fact, realizes its probability, but refrains from obtaining final confirmation in order to be able to deny knowledge if apprehended. *Jewell,* 532 F.2d at 700, n. 7. The state of mind "differs from positive knowledge only so far as necessary to encompass a calculated effort to avoid the sanctions of the statute while violating its substance." *Id.* at 704. The instruction is inappropriate where the facts point to actual knowledge rather than deliberate ignorance, *Kelm,* 827 F.2d at 1324, and should otherwise be used "sparingly." *United States v. Sanchez–Robles,* 927 F.2d 1070, 1073 (9th Cir.1991). It is not a routine instruction for cases in which knowledge is at issue. The instruction is inappropriate where the evidence could justify one of two conclusions, either that the defendant had knowledge, or that the defendant did not, but not a third conclusion, that the defendant deliberately shut her eyes to avoid confirming the existence of a fact she all but knew. *United States v. Sanchez–Robles,* 927 F.2d 1070 (9th Cir.1991).

██ We agree with Mrs. Mapelli that a deliberate ignorance instruction was inappropriate. The government presented evidence that Mrs. Mapelli was an officer of the corporation and worked in close proximity to her husband; that she had firsthand knowledge of the accounting system; and that she made significant deposits of currency from the business into the couple's personal bank account. This was evidence that Mrs. Mapelli was knowingly skimming, not that she deliberately avoided knowing. We are unable to conclude that, if she did not know, "the surrounding circumstances 'would have put any reasonable person on notice that there was a "high probability" that the undisclosed venture was illegal.'" *United States v. Bobadilla–Lopez,* 954 F.2d 519, 523 (9th Cir. 1992) (quoting *United States v. Nicholson,* 677 F.2d 706, 710 (9th Cir.1982)).

Mrs. Mapelli's position and activities relating to the meat business did not allow for a reasonable inference of willful blindness. She testified that she spent most of her life at home raising her children, not working in the business. Even after joining her husband at Mapelli Meat at the age of 51, her company responsibilities and hours were limited and a significant amount of her time, even while at the office, was spent on matters relating to her hobby of airplane racing. Mapelli Meat sold meat wholesale, almost entirely on credit, with a small amount on a cash basis for checks and only about one percent for currency. Numerous employees testified that they knew currency was being put in a cash box and then given to Mrs. Mapelli, but they did not know anything was wrong with the company's accounting for the cash. Nor, according to her testimony, did she.

The accounting system was complicated because of the complexity of large and diverse fluctuating inventories and the accrual method of determining profit and loss. Chester Borelli, the accountant who designed the system to track revenue, testified that it took him weeks to train Mr. Mapelli because of the complexity, and he

had given up on training Mrs. Mapelli because her "silly questions" persuaded him that "she didn't understand a darn thing."

Mrs. Mapelli's frequent currency deposits into the couple's account do not suggest willful blindness. The company accounting system was designed to track and report the currency as it came in, and it would not have affected reporting, as Mr. Borelli had designed the accounting system, whether the currency was put through the company checking account before the Mapellis drew it out, or was drawn out directly as cash. The failure to report the income derived from Mr. Mapelli's destruction of the paper records, not from the withdrawal of the currency before it went into the company account. Because the Mapellis owned the business, they were entitled to the money and there was nothing wrong with their taking money out of the company, in currency or any other form. The wrong was in failing to report the income to the government. While taking the currency out might be circumstantial evidence that Mrs. Mapelli knew they were avoiding accounting for it within the company, that would show actual knowledge, not deliberate avoidance of knowledge.

This is not to say that the evidence could not go to the jury on a theory that Mr. and Mrs. Mapelli were lying about her claimed ignorance of the critical facts, and that she knew they were skimming. A jury could infer from her withdrawals, deposits, and expenditures in currency, her handling of the currency at the office, and other evidence, that she knew the cash was not being reported and took it out to avoid paying taxes on it. But that would be knowledge, not deliberate ignorance.

■ We cannot find harmless error in the deliberate ignorance instruction. Like many tax evasion cases, the issue in this case was not what was done, but rather the state of mind with which it was done. The prosecutor read the deliberate ignorance instruction in his closing argument, using it effectively to assist the jury in evaluating the mental element. As the evidence in this case developed, the government had to prove that Mrs. Mapelli was lying. Since

there was insufficient evidence of deliberate ignorance, the effect of the instruction, if it had an effect, could only have been to enable the jury to convict if they thought she was ignorant of the skimming but careless in not finding out. That is not the criminal state of mind required for conviction.

### III. Use Immunity and Disqualification

Although reversal is required because of the deliberate ignorance instruction, the use immunity issue may recur if the case is tried again, so we consider it in the interests of judicial efficiency. Before her trial, Mrs. Mapelli moved to disqualify Damm and Chamberlain, the two Assistant United States Attorneys who had prosecuted John Beuchat, on the ground that they might use against her what they learned from her immunized testimony in Beuchat's trial. The government filed a memorandum in opposition, arguing that disqualification was not required as a matter of law, but filed no affidavits or other evidence showing that the immunized testimony would not be used. No evidentiary hearing was held. The district court denied Mrs. Mapelli's motion to disqualify.

■ With exceptions not material to this case, the controlling statute provides that "no testimony or other information compelled under the order (*or any information* directly or *indirectly derived from such testimony* or other information) may be used against the witness in a criminal case...." 18 U.S.C. § 6002 (emphasis added). The statute expressly proscribes use of information indirectly derived from immunized testimony, not just direct use of the immunized testimony itself. The proscribed indirect use includes "planning trial strategy." *United States v. McDaniel*, 482 F.2d 305, 311 (9th Cir.1973).

■ The government correctly argues that there is no per se rule requiring withdrawal of a prosecutor who has been exposed to immunized testimony. *United States v. Crowson*, 828 F.2d 1427, 1429–1430 (9th Cir.1987), *cert. denied*, 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988).

The government, however, often protects against a claim of indirect use by assigning the case to others not exposed and barring communication between them and the prosecutors who obtained the compelled testimony. Under *Crowson* the government can in some cases prove that disqualification is not necessary, but the government has the burden of proof. A person who is compelled to testify against herself under a grant of immunity need show only that she so testified, to shift to the government "the heavy burden" of proving an independent source for all its evidence. *Kastigar v. United States*, 406 U.S. 441, 461, 92 S.Ct. 1653, 1665, 32 L.Ed.2d 212 (1972). "This burden of proof ... is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Id.* at 460, 92 S.Ct. at 1664–65. To carry this burden, the government must present evidence, not just argument. *United States v. Rogers*, 722 F.2d 557, 560 (9th Cir.1983), *cert. denied*, 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984); cf. *United States v. Zielezinski*, 740 F.2d 727, 734 (9th Cir.1984) (requiring evidentiary hearing at which prosecutor must establish independent sources of information). We must uphold the district court findings of fact unless they are clearly erroneous. *Crowson*, 828 F.2d at 1429. But in this case, there were no findings of fact, and could be none, since there was no evidence.

The government offered no evidence whatsoever that it would not use information derived from Mrs. Mapelli's compelled testimony. Instead it offered argument. Our review of the record does not show that the government made no indirect use of her testimony. We cannot tell. Nor could the district judge have ascertained prior to trial whether indirect use would be made. The decision to present or not present certain witnesses and exhibits, for example, might well have been affected by analysis of Velda Mapelli's compelled testimony. The government prosecutors knew what her story would be. It is an unusual criminal case in which the defendant testifies and the prosecutor does not cross examine at all. The prosecutors' decision not to cross examine Mrs. Mapelli might well have been made on the basis of her compelled testimony. Any use of information in Mrs. Mapelli's trial has not been shown to be "inevitable and harmless." Cf. id. at 1432. Since the government presented no evidence, it necessarily failed to meet its *Kastigar* burden of proof.

The judgment is VACATED and the conviction is REVERSED.