In the Matter of the GRAND JURY INVESTIGATION OF TARGETS (possible judicial corruption).

Civil No. 96–0061.

United States District Court,
S.D. California.

March 6, 1996.

Alan Bersin, U.S. Attorney, Charles La-Bella, Phillip Halpern, Asst. U.S. Attys., San Diego, CA, for U.S.

Robert Brewer, McKenna & Cuneo, San Diego, CA, for Michael Greer.

Dennis Riordan, Riordan & Rosenthal, San Francisco, CA, for Patrick Frega.

## MEMORANDUM OPINION AND ORDER DENYING TARGETS' MOTION TO DISQUALIFY THE LOCAL UNITED STATES ATTORNEY'S OFFICE

RAFEEDIE, District Judge.

### Introduction

Petitioners Michael I. Greer and Patrick R. Frega are targets of a federal grand jury investigation concerning alleged corruption among former state court judges.[1] Although the grand jury has not indicted them yet, Greer and Frega have moved to disqualify the local United States Attorney's Office from investigating this matter further or prosecuting them. The motion is based on an ethical conflict of interest stemming from the fact that one Assistant U.S. Attorney— not assigned to this matter—previously represented Frega during a state investigation of the same allegations.

The Court, having read and considered the moving papers, opposition, reply, declarations and exhibits submitted by counsel, and the declarations of Assistant U.S. Attorneys Phillip Halpern and Charles La Bella, and having concluded that this matter is proper for resolution without the need for oral argument, HEREBY DENIES the motion to disqualify the local U.S. Attorney's Office from further investigation or prosecution of Greer and Frega.

### Jurisdiction

This case arrives before the Court in a highly unusual posture, since no indictment has been filed and therefore no criminal case has been opened. However, the Court has looked to the concept of "anomalous jurisdiction" to determine whether it has jurisdiction to resolve this motion.

A district court has equitable jurisdiction to consider a motion to suppress evidence even in the absence of a filed indictment. *Meier v. Keller*, 521 F.2d 548, 554 (9th Cir.1975), *cert. denied*, 424 U.S. 943, 96

---

1. Greer was the former chief of the Superior Court in San Diego, and Frega was a private attorney practicing in San Diego.

S.Ct. 1410, 47 L.Ed.2d 348 (1976); *Pieper v. United States*, 604 F.2d 1131, 1133 (8th Cir. 1979). This jurisdiction—known as "anomalous jurisdiction"—stems "from the inherent authority of the court over those who are its officers." *Hunsucker v. Phinney*, 497 F.2d 29, 32 (5th Cir.1974), *cert. denied*, 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975).[2] Anomalous jurisdiction is to be exercised with caution and restraint. *Meier*, 521 F.2d at 554; *Pieper*, 604 F.2d at 1133. However, it is also most appropriately exercised in cases in which a criminal indictment is threatened, because "the criminal indictment itself carries a danger of stigmatization which may not be removed by a determination in a criminal trial." *Hunsucker*, 497 F.2d at 33. This matter, involving alleged judicial corruption, is an appropriate case for the exercise of anomalous jurisdiction.

### Facts

Moving parties Greer and Frega are targets of a federal grand jury investigation concerning alleged bribery, tax evasion, conspiracy, and racketeering activities of former California Superior Court judges in San Diego. Although the targets have not been indicted, the United States expected to obtain indictments as early as February 15, 1996. Greer and Frega have moved to disqualify the U.S. Attorney's Office for the Southern District of California from investigating or prosecuting them, on ethical conflict of interest grounds.[3]

The alleged conflict stems from Assistant U.S. Attorney Michael Dowd's representation of Frega during a state investigation of the same allegations of bribery in 1992. It is undisputed that Dowd and Frega shared privileged attorney-client conversations during this representation, and all parties agree that Dowd is disqualified from participating in the federal investigation of the targets.

The local United States Attorney's Office was not immediately aware of Dowd's prior representation of Frega. It appears to have come to the Office's attention when Special Agent John Gillies approached Dowd to see if he would be interested in joining the bribery investigation. (Redacted Declaration of Charles La Bella ¶ 10). At that time, Dowd explained that he could not do so due to an ethical conflict of interest.

Although the United States Attorney's Office does not so state explicitly, the primary reason that Dowd's conflict did not surface until he was approached by Gillies is that U.S. Attorney Alan Bersin instructed Assistant U.S. Attorneys Phillip Halpern and Charles La Bella to keep the bribery investigation confidential within the Office. (Declaration of Charles La Bella ¶¶ 3, 9).[4] Throughout the investigation, La Bella and Halpern kept the files on this case segregated from all other files; in a separate building with access restricted to prosecutors working on the investigation. (Declaration of Phillip Halpern ¶ 13).[5]

By May 1995, however, the existence of the investigation had become public knowledge, and Halpern and La Bella implemented a screen specifically for Dowd. On May 12, 1995, Halpern directed that all files and case materials pertaining to the corruption investigation be visibly marked as such, and that all personnel be made aware of the significance of these markings. On May 23, 1995, Halpern sent electronic mail to the other attorneys informing them of Dowd's recusal.

---

**2.** *Hunsucker* specifically included United States Attorneys within the reach of "anomalous jurisdiction." *Id.* at 32 n. 3.

**3.** The other targets, James A. Malkus, G. Dennis Adams, and James A. Williams, have not joined in this motion.

**4.** Paragraph 3 of La Bella's declaration has not been released previously. It states in relevant part: "Due to the investigation's sensitive nature, the United States Attorney and I determined that no one else in this Office was to have any knowledge that the case had been opened as a criminal

investigation. The U.S. Attorney wanted to guard closely this information, *inter alia*, to avoid the inadvertent disclosure of such a preliminary investigation to anyone outside of the U.S. Attorney's Office."

**5.** Paragraph 13 of Halpern's declaration has not been released previously. It states in relevant part: "[W]e continued to segregate all relevant documents in a locked room located in the Federal Building. Access to this room was restricted to the AUSAs who were working on the investigation."

(Redacted Declaration of Phillip Halpern ¶¶ 15–18).

On January 12, 1996, Frega and Greer sought a temporary restraining order to enjoin the U.S. Attorney's Office from proceeding with the investigation, based on Dowd's recusal. They also filed a motion to disqualify the Office on the same ground. The Honorable Rudi M. Brewster[6] denied the TRO application and was prepared to hold an evidentiary hearing on the disqualification motion. However, on January 19, 1996, the entire federal bench in San Diego recused itself, and the Ninth Circuit assigned the case to this Court.

## Discussion

The issue before the Court is whether Dowd's disqualification requires recusal of the entire U.S. Attorney's Office for the Southern District of California from investigating or prosecuting Greer and Frega. The answer lies in the applicable rules of professional conduct.

 Attorneys admitted to practice in the Southern District of California must adhere to the California Rules of Professional Conduct as well as the American Bar Association Model Rules of Professional Conduct. Local Rule 83.5(e)(2).[7] Rule 83.5(e)(2) ap-

plies to Assistant United States Attorneys. *See United States v. Lopez,* 4 F.3d 1455, 1459 (9th Cir.1993) (holding that the California Rules of Professional Conduct and state court decisions regarding professional conduct were binding on government attorneys in the Northern District through Local Rule 110–3, the equivalent of Rule 83.5(e)(2) in that district). Therefore, whether the U.S. Attorney's Office should be disqualified is to be determined by analyzing the requirements of the California Rules, the Model Rules, and state and federal cases.[8]

### A. Ninth Circuit Authority

The leading disqualification case in the Ninth Circuit is *Trone v. Smith,* 621 F.2d 994 (9th Cir.1980), which held that an entire private law firm would be disqualified if one of its attorney's former representation of a client was substantially related to current adverse representation against the former client. *Id.* at 998–99. Greer and Frega argue that since Dowd's former representation is undisputedly substantially related to the present adverse representation, the entire office must be disqualified from investigating this matter under the imputed disqualification rule.[9]

---

6. United States District Court Judge for the Southern District of California.

7. Local Rule 82.5(e), titled "Standards of Professional Conduct," states as follows:

Every member of the bar of this court and any attorney permitted to practice in this court shall be familiar with and comply with the standards of professional conduct required of members of the State Bar of California, and decisions of any court applicable thereto, which are hereby adopted as standards of professional conduct of this court. This specification shall not be interpreted to be exhaustive of the standards of professional conduct. In that connection, the Code of Professional Responsibility of the American Bar Association should be noted. No attorney permitted to practice before this court shall engage in any conduct which degrades or impugns the integrity of the court or in any manner interferes with the administration of justice therein.

8. Greer and Frega seek to disqualify the U.S. Attorney's Office from both investigating and prosecuting them for alleged judicial corruption. Because of the traditional reluctance of federal

courts to interfere with investigations prior to indictment, *see In re Hugle,* 754 F.2d 863, 864 (9th Cir.1985), there is no case law regarding disqualification from *investigation,* as opposed to prosecution. However, the Court believes that the standard for disqualification from prosecution is also applicable to disqualification from investigation, since judicial intervention in the pre-indictment stage typically requires a showing of "serious abuses." *In re Grand Jury Investigation,* 696 F.2d 449, 451 (6th Cir.1982). Thus, if Greer and Frega cannot succeed in persuading the Court to disqualify the U.S. Attorney's Office from prosecuting them, they obviously cannot succeed in persuading the Court to disqualify the Office from investigating them.

9. *Trone* defined substantially related prior representation as where "the factual contexts of the two representations are similar or related." *Id.* at 998. In addition, "[i]f there is a reasonable probability that confidences were disclosed which could be used against the client in later, adverse representation, a substantial relation is presumed." *Id.* In this case, Dowd's prior representation covered the exact same factual allegations, and is therefore undisputedly substantially related.

However, *Trone* is clearly not applicable to government attorneys. Its holding is based on the ABA Model Code of Professional Conduct,[10] which has since been replaced by the ABA Model Rules of Professional Conduct. Model Rule 1.11(c)(1) states:

> Except as law may otherwise expressly permit, a lawyer serving as a public officer or employee shall not ... participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment, unless under applicable law no one is, or by lawful delegation may be, authorized to act in the lawyer's stead in any matter.

Comment [9] to Model Rule 1.11 states: "Paragraph (c) does not disqualify other lawyers in the agency with which the lawyer in question has become associated."

That *Trone* does not apply to government attorneys is consistent with Ninth Circuit authority.[11] In *United States v. Weiner*, 578 F.2d 757, 767 (9th Cir.), *cert. denied*, 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978), the Ninth Circuit concluded that the assumption of free flow of information within private law firms did not hold for large government agencies.

In *United States v. Mapelli*, 971 F.2d 284 (9th Cir.1992), the Ninth Circuit disqualified two Assistant U.S. Attorneys who had been exposed to the defendant's immunized testimony. However, the court did not disqualify the entire U.S. Attorney's Office. *Id.* at 287–88. Although *Mapelli* concerned a violation of *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972),[12] and not prior representation, the individually disqualified attorneys in that case were tainted for the same reason that Dowd is: each possessed knowledge about the defendant that could not be used against the defendant. If the Ninth Circuit had intended imputed disqualification to apply to government attorneys, the entire U.S. Attorney's Office in *Mapelli* would have been disqualified, since the assumption of free flow of information would lead to a presumption that the entire Office had acquired knowledge of the contents of the immunized testimony.

*Mapelli* is analogous with the situation in this case.[13] Along with *Weiner* and Model Rule 1.11(c), it demonstrates that Ninth Circuit authority does not support disqualifying the U.S. Attorney's Office.[14]

### B. California Authority

■ There are, of course, no California cases focusing on the disqualification of federal prosecutors. However, California courts have visited the issue of recusing state prose-

**10.** *Trone* does not explicitly state its reliance on the Model Code. However, this conclusion is unmistakable when one considers that the opinion discusses the need to uphold Canons 1, 4, 5, 6, 7, and 9, with descriptions of those canons that match exactly those given in the Model Code. *Id.* at 999.

**11.** An underlying assumption of *Trone*'s imputed disqualification rule is that the client is not significantly prejudiced when the entire law firm is disqualified by the disqualification of a single attorney, because the client is free to hire another law firm. This assumption necessarily requires that there be enough law firms so that the client can find another comparable firm. In the case of government agencies, however, this assumption fails. The only choices for federal prosecution are the local Assistant U.S. Attorneys, Department of Justice attorneys, or special prosecutors.

**12.** In *Kastigar*, the Supreme Court held that information obtained from a person testifying under a grant of immunity could not be used against that person in subsequent prosecution, and that the person could force the prosecution to prove that it obtained all its evidence against him through independent sources. *Id.* at 461–62.

**13.** *Mapelli* is particularly fatal to Greer's and Frega's motion, since the Ninth Circuit did not even disqualify federal prosecutors who had worked on the same matter with the tainted attorneys.

**14.** *See also United States v. Caggiano*, 660 F.2d 184, 190–91 (6th Cir.1981) (holding that vicarious disqualification does not apply to U.S. Attorney's Offices), *cert. denied, sub nom., Winfield v. United States*, 454 U.S. 1149, 102 S.Ct. 1015, 71 L.Ed.2d 303 (1982); Formal Opinion 342, 62 A.B.A.J. 517 (1976) (stating the opinion of the ABA Committee on Professional Ethics that prosecutors were different from private attorneys, because "[t]he channeling of advocacy toward a just result as opposed to vindication of a particular claim lessens the temptation to circumvent the disciplinary rules").

cutors a number of times.[15] For recusal to be ordered, "the conflict must be of such gravity as to render it unlikely that defendant will receive a fair trial unless recusal is ordered." *People v. Conner*, 34 Cal.3d 141, 147, 193 Cal.Rptr. 148, 666 P.2d 5 (1983) (citing Calif.Penal Code § 1424).[16] *Conner* and § 1424 thus overruled the previous rule of *People v. Superior Court (Greer)*, 19 Cal.3d 255, 266–69, 137 Cal.Rptr. 476, 561 P.2d 1164 (1977), which required recusal "if · the conflict either affects or appears to affect the district attorney's ability to perform the discretionary function of his office." *Conner*, 34 Cal.3d at 147, 193 Cal.Rptr. 148, 666 P.2d 5.

Greer and Frega argue that California cases regarding recusal of state prosecutors do not apply to federal prosecutors because district attorneys are officials elected by the voters of the districts that they serve. This argument is not wholly devoid of merit, since the fact that district attorneys are elected officials has been a factor leading California courts to conclude that disqualification should require a considerable showing of risk of an unfair trial:

> Caution is necessary because "when the entire prosecutorial office of the district attorney is recused and the Attorney General is required to undertake the prosecution or employ a special prosecutor, the district attorney is prevented from carrying out the statutory duties of his elected office and, perhaps even more significantly, the residents of the county are deprived of the services of their elected representative in the prosecution of crime in the county. The Attorney General is, of course, an elected state official, but unlike the district attorney, is not accountable at the ballot box exclusively to the electorate of the county."

*People v. Lopez*, 155 Cal.App.3d 813, 822, 202 Cal.Rptr. 333 (1984) (quoting *Younger v. Superior Court*, 86 Cal.App.3d 180, 204, 150 Cal.Rptr. 156 (1978)).

Nevertheless, this difference is not as significant as Greer and Frega would make it. It is true that the local U.S. Attorney is appointed by the President, rather than elected by the voters of the district. 28 U.S.C. § 541(a). However, *Lopez* noted that the state Attorney General is also elected by voters. The significant difference between the District Attorney and the state Attorney General is that the former serves the county from which he is elected, whereas the latter serves the entire state. In the same way, the local U.S. Attorney serves the district for which he is appointed, whereas the United States Attorney General serves the entire country. Thus, ·the reason that disqualification of district attorney's offices is disfavored applies with full force to U.S. Attorney's offices. Replacing the local U.S. Attorney's Office with the Department of Justice frustrates the U.S. Attorney from carrying out his statutory duties, and deprives the residents of the Southern District of California from the services of their local federal prosecutor.

Under the California rule, the Court must determine whether Dowd's prior representation of Frega renders it unlikely that Frega and the other targets will receive fair trials. An examination of other California cases applying this rule is therefore warranted.

In *People v. Conner, supra*, the California Supreme Court upheld the disqualification of the felony division of the Santa Clara District Attorney's Office because one of the prosecutors had been shot at by the defendant. 34 Cal.3d at 148, 193 Cal.Rptr. 148, 666 P.2d 5. In determining the gravity of the conflict, that court considered "the size of the office, the communication of the threat by Braughton to his co-workers, [and] the seriousness of the apparent threat." *Id.* Because the felony division was comprised of only twenty-five attorneys, and because the disqualified attorney had actually spoken about the inci-

---

**15.** Since California law recognizes that different disqualification rules apply to prosecutors than to private attorneys, cases discussing the disqualification of law firms are not relevant to this discussion.

**16.** Calif.Penal Code § 1424 states in relevant part: "The motion [to disqualify] shall not be granted unless it is shown by evidence that a conflict of interest exists as would render it unlikely that the defendant would receive a fair trial."

dent to approximately half of the attorneys, the California Supreme Court concluded that there was substantial evidence to support the trial court's ruling disqualifying the entire division. *Id.*

■ The facts of this matter are significantly different from those in *Conner.* First, the Court may take judicial notice pursuant to Fed.R.Evid. 201 of the fact that the U.S. Attorney's Office for the Southern District of California has in excess of seventy-five attorneys.[17] Second, the conflict in *Conner* existed because Braughton spoke to about half of the attorneys about being shot at. Given the small size of the office, the California Supreme Court concluded that even attorneys who had not talked to Braughton would know of the incident and would harbor potential prejudice. The court focused on the "dramatic and gripping nature" of the "harrowing experience" and concluded that it would be difficult to gauge the overall effect. 34 Cal.3d at 148–49, 193 Cal.Rptr. 148, 666 P.2d 5.

■ In this case, however, the alleged conflict is not emotional bias, but disclosure of confidential information. Thus, the particular fact that Dowd has been recused is not, in and of itself, a reason to disqualify the other attorneys from the investigation, as it would be if the conflict were emotional bias. Furthermore, there is no evidence that Dowd has actually disclosed such information, and indeed, California and federal case law does not presume that government attorneys share confidential information. *United States v. Weiner,* 578 F.2d 757, 767 (9th Cir.), *cert. denied,* 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978) (noting that the free flow of information assumed to exist within law firms is not assumed for government agencies); *In re Charles Willie L.,* 63 Cal.App.3d 760, 765, 132 Cal.Rptr. 840 (1976) ("Any analogy between a private law firm and the district attorney's office is tenuous at best").

In *People v. Lopez, supra,* the court considered a motion to disqualify the Imperial County District Attorney's Office, on the grounds that one of the ten attorneys in the office had previously represented the defendant during the preliminary hearing. 155 Cal.App.3d at 819, 202 Cal.Rptr. 333. The disqualified attorney submitted a sworn declaration in which he "declared he had not and would not discuss Lopez's strategy with anyone in the DA's office, nor had he or would he divulge any client confidences or cooperate in the prosecution of the case." *Id.* The prosecutor assigned to the case submitted a sworn declaration in which he stated that he "had not communicated with [the attorney] about the case and neither had nor would seek any cooperation." *Id.* Based on these facts, the trial court denied the motion to disqualify. The appellate court upheld this ruling, despite the small size of the office. *Id.* at 827, 202 Cal.Rptr. 333. Based on the declarations, the appellate court was satisfied that "there was no suggestion or evidence that any leak in the wall of silence ... had occurred or would occur." *Id.*

*Lopez* is particularly instructive as to this case. As noted before, the U.S. Attorney's Office for the Southern District has more than seventy-five attorneys, and is thus much larger and more diffuse than the Imperial County District Attorney's Office. As in *Lopez,* the federal prosecutors in this case have submitted declarations that they have not spoken with Dowd about the investigation.[18] (Redacted Declaration of Charles La Bella ¶ 20; Redacted Declaration of Phillip Halpern ¶ 19).

Greer and Frega further argue that *Love v. Superior Court,* 111 Cal.App.3d 367, 168 Cal.Rptr. 577 (1980), requires the disqualification of U.S. Attorney Alan Bersin and Assistant U.S. Attorneys Phillip Halpern and Charles La Bella, as well as Special Agent John Gillies, based on their close working relationship with Dowd. In *Love,* a law student who helped prepare the defendant's

---

**17.** This information is readily available on Westlaw, in West's Legal Directory, and is thus "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed.R.Evid. 201(b)(2).

**18.** It appears that La Bella initially approached Dowd about joining the investigation and learned at that time that Dowd could not do so due to an ethical conflict. (Redacted Declaration of Charles La Bella ¶ 10; Redacted Declaration of Phillip Halpern ¶ 6).

case later became a prosecutor while the defendant was still being prosecuted. The court disqualified all five prosecutors who worked closely with the former law student on the ground that "the appearance of impropriety in such a situation is indeed serious." *Id.* at 374, 168 Cal.Rptr. 577. Greer and Frega argue that Halpern, La Bella, Bersin, Gillies, and other Assistant U.S. Attorneys have worked with Dowd and must therefore be disqualified.

However, *Love* made no mention of Calif.Penal Code § 1424 and appears to have been based instead on the now-discredited rule of *Greer* that the appearance of impropriety was sufficient to disqualify prosecutors. Therefore, it is doubtful that *Love* remains controlling authority, and the Court declines to apply it in the face of contrary authority, such as Calif.Penal Code § 1424 and *Conner.*

Greer and Frega also cite *People v. Lepe,* 164 Cal.App.3d 685, 211 Cal.Rptr. 432 (1985), in which the court disqualified the entire district attorney's office because the District Attorney had previously represented the defendant. The deputy prosecutors were disqualified also, because they were "hired by Storey [the D.A.], evaluated by Storey, promoted by Storey, and fired by Storey." *Id.* at 689, 211 Cal.Rptr. 432. The other prosecutors would necessarily be influenced by Storey. Therefore, the entire office had to be recused. Dowd, however, is not the U.S. Attorney, did not hire the other prosecutors, does not evaluate them, does not promote them, and does not have the power to fire them. Therefore, *Lepe* is not on point.

In summary, under applicable state law, the local United States Attorney's Office need not be disqualified. This conclusion is buttressed by an independent examination of the facts of this matter to determine whether there is a grave risk of an unfair trial. Greer and Frega would not receive a fair trial if Dowd imparted any attorney-client knowledge he possessed about Frega—thus, the issue to be determined is the gravity of that risk.

The declarations submitted by the Assistant U.S. Attorneys indicate that only U.S. Attorney Bersin and the individual prosecutors working on the investigation knew of its existence, and that they specifically avoided discussing the matter with other prosecutors. (Redacted Declaration of Charles La Bella ¶ 9). Thus, there appears to be no realistic opportunity for them to have obtained any confidential information from Dowd by way of discussing this investigation, even before they became aware of Dowd's conflict and took active steps to screen him from the investigation.

Greer and Frega argue that because Halpern, La Bella, Bersin, and Agent Gillies worked with Dowd on other matters,[19] they may have inadvertently discussed matters relating to Dowd's representation of Frega. This particular fear is of course the reason the Ninth Circuit adopted the imputed disqualification rule in *Trone v. Smith,* 621 F.2d 994, 999 (9th Cir.1980): "Confidential information possessed by one attorney may or may not have been shared with other members of the firm, but the firm as a whole is disqualified whether or not its other members were actually exposed to the information." However, as noted earlier, the imputed disqualification rule does not apply to government agencies. Moreover, this scenario, while remotely plausible, is largely inconsistent with the declaration that the investigating prosecutors kept the matter confidential.

Accordingly, California authority does not support disqualifying the local U.S. Attorney's Office.

### C. Outside Circuit Authority

Greer and Frega also cite *United States v. Goot,* 894 F.2d 231, 235 (7th Cir.1990), *cert. denied,* 498 U.S. 811, 111 S.Ct. 45, 112 L.Ed.2d 22 (1990), for the proposition that disqualification of the U.S. Attorney's Office is required where the office fails to prepare objectively adequate screening measures. In *Goot,* the Seventh Circuit held that the U.S.

---

**19.** Greer and Frega point out that the names of Dowd, Halpern, and La Bella appear jointly on an information in *United States v. Sahadi,* dated August 13, 1994. (Declaration of Dennis Riordan, Exh. H).

Attorney's Office had properly screened the U.S. Attorney from the investigation of his former client by: (1) following the recusal guidelines in the U.S. Attorney's Manual; (2) screening him even before he assumed office; and (3) instructing the attorneys in the office of his recusal. *Id.* at 234–35.[20] Although the court felt that the office could have taken further steps, it concluded that these steps were objectively verifiable and sufficient to rebut the presumption of shared confidences. *Id.* at 235–36.

Greer and Frega argue that the local U.S. Attorney's Office took no such steps. However, Greer and Frega cite the wrong section of the U.S. Attorney's Manual. Greer and Frega refer to the requirements for recusal of the U.S. Attorney. (U.S. Attorney's Manual § 1–3.170). The appropriate section of the Manual is that dealing with recusals of Assistant U.S. Attorneys. (U.S. Attorney's Manual § 1–3.220). Thus, the requirements that Greer and Frega maintain were not followed are not intended to be imposed when an Assistant U.S. Attorney is recused. Moreover, neither compliance nor failure to comply with the Manual is dispositive. *Goot,* 894 F.2d at 235; *United States v. Montoya,* 45 F.3d 1286, 1295 (9th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 67, 133 L.Ed.2d 29 (1995).

Second, although the Office did not screen Dowd from the outset of his rejoining the U.S. Attorney's Office, the procedures that Halpern and La Bella implemented effectively screened everyone in the Office, with the exception of the Assistant U.S. Attorneys actually working on the investigation. Under these circumstances, where every prosecutor assigned to the case was instructed to keep the work confidential, Dowd—along with the rest of the Office—would have been screened.

Thus, *Goot* provides no authority for disqualifying the U.S. Attorney's Office in this case.

### D. Evidentiary Hearing

■ The Court must also determine if Greer and Frega are entitled to an evidentiary hearing in this matter. To be entitled to an evidentiary hearing on this matter, Greer and Frega must "present factual allegations by affidavit that, if true, would warrant relief." *United States v. Rewald,* 889 F.2d 836, 860 n. 23 (9th Cir.1989), *cert. denied,* 498 U.S. 819, 111 S.Ct. 64, 112 L.Ed.2d 39 (1990); Local Rule 73.6(i)(1). In certain circumstances, the burden is on the United States to establish that tainted attorneys have not spread information to other prosecutors. *See, e.g., United States v. Zielezinski,* 740 F.2d 727, 734 (9th Cir.1984) (requiring the United States to establish through an evidentiary hearing its independent sources of information to avoid a *Kastigar* violation). However, in this instance, the burden is on Greer and Frega to make a showing of actual disclosure or prejudice. *See United States v. Lorenzo,* 995 F.2d 1448, 1453 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 225, 126 L.Ed.2d 180 (1993); *Goot,* 894 F.2d at 237 (holding no evidentiary hearing necessary where moving party failed to "make a substantial showing" of actual disclosure or prejudice).

An evidentiary hearing would be necessary only if Greer and Frega sought to show that disclosure of confidential information actually occurred. Since Greer and Frega are not proceeding under this theory, an evidentiary hearing is not necessary. Moreover, Greer and Frega provide no evidence to believe that disclosure occurred, and the declarations of Halpern and La Bella state that they received no information from Dowd. (Redacted Declaration of Charles La Bella ¶ 21; Redacted Declaration of Phillip Halpern ¶ 19). Significantly, these declarations are uncontradicted, a factor that weighs against an evidentiary hearing. *Montoya,* 45 F.3d at 1297–98 (holding that, even with the government bearing the burden of proof,

---

**20.** *Goot* is an out-of-circuit case and ordinarily would only be persuasive authority. However, Rule 83.5(e) states that the Southern District of California "is committed to the highest standards of professionalism," and that the requirement of adherence to the California Rules of Professional

Conduct "shall not be interpreted to be exhaustive of the standards of professional conduct." Arguably, Rule 83.5(e) imposes on attorneys in the Southern District any applicable standard of professional conduct. If so, *Goot* would assume controlling authority status.

an evidentiary hearing was not needed for the resolution of a *Kastigar* violation where the prosecutors' declarations that they had not been exposed to immunized testimony was uncontradicted).

Accordingly, the Court concludes that an evidentiary hearing is not warranted in this matter. In the absence of any showing by Greer and Frega that confidential information was disclosed, such a hearing would only serve as a fishing expedition for Greer and Frega.

### E. Encroachment on States' Rights

■ Lastly, Greer and Frega argue that this investigation is an improper encroachment upon States' rights. They point out that the state of California has already conducted its own investigation and concluded that criminal charges are not warranted. *See, e.g., Adams v. Commission on Judicial Performance,* 10 Cal.4th 866, 915, 42 Cal. Rptr.2d 606, 897 P.2d 544 (1995) (removing former state court Judge G. Dennis Adams from office for ethical violations, but allowing him to continue to practice law). For the federal government to step in is, in Greer's and Frega's view, an intrusion in an area traditionally reserved for the states. For this proposition, they cite *United States v. Lopez,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) and *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

*Lopez* and *Younger* are inapplicable to this matter. In *Lopez,* the Supreme Court struck down the Gun–Free School Zones Act of 1990, 18 U.S.C. § 922(q), which made it a federal crime to possess a firearm within 1000 feet of a school zone, as beyond Congress' power to regulate interstate commerce. —— U.S. at ——, 115 S.Ct. at 1626.[21] In this case, on the other hand, among the federal crimes that the targets may have committed are: bribery concerning a program receiving federal funds, in violation of 18 U.S.C. § 666; tax evasion, in violation of 26 U.S.C. § 7201; conspiracy, in violation of 18 U.S.C. § 371; and racketeering, in violation of 18 U.S.C. § 1962. These crimes are within the purview of the federal government.[22]

Similarly, in *Younger,* the Supreme Court held that federal courts would not enjoin state prosecutions, even if the grounds for requesting the injunction were based on federal defenses. 401 U.S. at 53, 91 S.Ct. at 755. Greer and Frega apparently rely on *Younger*'s discussion of "Our Federalism." [23] However, the dispositive difference between the situation in *Younger* and this matter is that in *Younger,* the federal court was asked to *enjoin* a state court proceeding, whereas in this matter, the state of California has already concluded its investigation. Therefore, this federal investigation is not interfering with any state proceeding, and there is no intrusion on federal-state comity.[24]

Greer and Frega disagree with the federal government's investigation of this matter. If the State of California shares this disagreement, it is free to exercise its political influence on Congress to reduce the federal government's power. *See Garcia v. San An-*

21. *Lopez* does contain dicta to the effect that "areas such as criminal law enforcement or education" have traditionally been reserved for the states to regulate. *Id.* at ——, 115 S.Ct. at 1632. However, *Lopez*'s holding is clearly based on the scope of the Commerce Clause. *Id.* at ——, 115 S.Ct., at 1634.

22. To the extent that Greer and Frega mean to challenge the constitutionality of the federal crimes that they expect to be indicted for violating, their challenge is not yet ripe, as no such indictments have been handed down by the grand jury.

23. *Younger* defined "Our Federalism" as:
What the concept does represent is a system in which there is sensitivity to the legitimate in-

terests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.
*Id.* at 44, 91 S.Ct. at 750–51.

24. In this regard, this situation is less similar to that in *Younger* than it is to the federal prosecution, following state acquittal, of the Los Angeles police officers who beat Rodney King. *See generally United States v. Koon,* 34 F.3d 1416, 1438 (9th Cir.1994) (discussing "dual sovereignty"), *cert. granted on other grounds,* —— U.S. ——, 116 S.Ct. 39, 132 L.Ed.2d 920 (1995).

*tonio Metropolitan Transit Authority,* 469 U.S. 528, 556, 105 S.Ct. 1005, 1020, 83 L.Ed.2d 1016 (1985) (noting "the built-in restraints [on federal power] that our system provides through state participation in federal governmental action"). However, the fact that the local U.S. Attorney's Office chose to investigate Greer and Frega for possible violations of federal law is a policy matter that is not subject to judicial review.

### Conclusion

The Court has canvassed a variety of state and federal law on professional responsibility to determine if the local U.S. Attorney's Office should be disqualified. The Court's conclusion is that the Office should not be disqualified. The sole reason that Dowd's conflict did not surface earlier and that he was not screened immediately was that Halpern and La Bella kept the entire investigation segregated from the rest of the Office. In that circumstance, the risk of confidential information spilling accidentally from Dowd is remote, since neither Halpern nor La Bella would have initiated conversation leading to such disclosure. To do so, they would have had to divulge the existence of the investigation which they themselves were keeping secret.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve, by telefax or United States mail, copies of this Order on counsel for the parties in this matter.