**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Angela Dawn SHANNON,**
**Defendant–Appellant.**

**No. 97–10057.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 8, 1997.

Decided March 2, 1998.

Sandra Gillies, Woodland, California, for defendant-appellant.

Paul L. Seave, United States Attorney and Benjamin B. Wagner, Assistant United States Attorney, Sacramento, California, for plaintiff-appellee.

Before: BRIGHT,* FLETCHER, and T.G. NELSON, Circuit Judges.

PER CURIAM:

Angela Dawn Shannon appeals her conviction and 46-month sentence the district court imposed after a jury found her guilty of one felony count of interfering with commerce by threatened physical violence, 18 U.S.C. § 1951, and one felony count of mailing a threatening communication, 18 U.S.C. § 876, 18 U.S.C. § 2. These counts and felony convictions relate to a death threat Shannon mailed to a doctor who performs abortions. On appeal, Shannon argues the district court erred in giving a "deliberate ignorance" instruction under *United States v. Jewell*, 532 F.2d 697 (9th Cir.1976) (en banc), in admitting a letter that Shannon received from a friend, and also erred in imposing a two-level enhancement at sentencing for Shannon's perjury during her trial testimony. We affirm Shannon's conviction and sentence.

## I. FACTS

Appellant Angela Shannon, age 23, and her mother, Rachelle Shannon, have a history of activism in the anti-abortion movement. In August 1993, about five months after the mailing of the threat letter that is the subject of this appeal, Rachelle Shannon shot an abortion doctor in Wichita, Kansas. A Kansas state court convicted Rachelle Shannon in March 1994 of attempted murder in connection with that shooting.

In February 1993, the Shannons together with other activists from California and elsewhere traveled to Milwaukee, Wisconsin, to participate in demonstrations at abortion clinics. The Shannons protested at several clinics and Angela participated in a blockade of two clinics. The Shannons also infiltrated other clinics, taking pictures and recording information about the facilities.

While in Milwaukee, the Shannons met and befriended David Eck, a young anti-abortion protester who was active in the Milwaukee area. Angela and Eck, who was romantically interested in Angela, spent considerable time together in Milwaukee. After Angela returned to Oregon, Eck wrote her, telephoned her, and visited her.

Angela Shannon arranged to meet with her friend, Eric Armstrong, at the Sacramento airport at the time the Shannons flew back from Milwaukee. Armstrong lived in Stockton, California and had met Angela at an abortion protest in 1988. During the course of their visit in Sacramento, Angela handed Armstrong a sealed, stamped envelope, asked him to mail the envelope when he returned home, and told him she did not want the letter traced to her. Armstrong accepted the envelope and mailed it from Stockton a few days later.

Dr. George Woodward performed abortions as a physician/employee at a Planned Parenthood clinic in Milwaukee, Wisconsin. On about March 3, 1993, Dr. Woodward's wife, Susan, retrieved the mail from the mailbox at the Woodwards' home. She found a letter postmarked Stockton, California. The letter addressed to Dr. Woodward was threatening in nature, warning the doctor if he had not "stopped killing" by March 16, 1993, the writer would "stalk" him down and harm him and his family. The letter included specific information that enhanced the credibility of the threat, such as a description of the doctor's car, a description of the building in which he worked, his home address, the fact that he sang in his church choir, and the fact that he had a "habit of stopping at McDonalds on Wisconsin Ave." before going to work.

The letter concluded with the following threat: "If I hear you are still killing when I get to town I will haunt you and your wife day and night and give you no peace. If you continue, I will hunt you down like any other wild beast and kill you. You have until the 16th." The threat letter was typed on unusual stationery that featured a cloudburst with lightning.

In the threat letter, the name of the city of Milwaukee was misspelled "Milwalkie." In addition, the Woodwards' address on the out-

* The Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

side of the envelope contained three small errors: the zip code was incorrect, the suffix "East" had been left off of the street name, and the two words in the name of the town in which the Woodwards lived, Elm Grove, had been condensed into "Elmgrove." Newspapers in Milwaukee published accounts of the threat letter, including the text of the letter and that the letter had been mailed from Stockton, California.

In September 1993, police executed a search warrant at Angela Shannon's apartment after Oregon State Police Officers found material implicating her during a search of Rachelle Shannon's home. The officers had found in Rachelle Shannon's home a one-page typed document titled "Profile of a Death Camp" describing the Planned Parenthood clinic where Dr. Woodward worked. The officers also found a one-page typed document titled "Profile of a Killer" describing Dr. Woodward. The above two documents contained similar information contained in the threat letter and envelope, including two of the address errors.

At Rachelle Shannon's home, the officers also found a letter from David Eck to Angela Shannon. At the end of the letter, Eck wrote the following: "Talking about incriminating, don't rescue in a certain city in Cal. they are running fingerprints found on a particular peice [sic] of mail sent from their [sic]. No problems around here . . . ."

Based on this material, Angela Shannon became a suspect in mailing the threat letter to Dr. Woodward. The FBI subsequently identified Angela Shannon's fingerprints on the threat letter and the envelope. Eric Armstrong later told the FBI that he had met Angela Shannon in late February 1993, that she had given him a letter to mail for her, and that he mailed it from Stockton, California. Eric Armstrong also testified at trial about mailing the letter for Angela Shannon.

In addition, Armstrong testified that he received three letters from Angela Shannon. Armstrong testified that Angela Shannon used the word Milwaukee four times in the three letters, misspelling it each time as "Milwalkie." Armstrong also testified to reading an article in a Stockton newspaper describing the threat letter mailed from Stockton. Armstrong stated he called Angela asking her why she would have him mail the letter without telling him what it contained. Armstrong testified that Angela responded that she did not want to get him in trouble.

Rachelle Shannon testified as a witness for the defense and claimed responsibility for the letter. She said that she had written the threat letter to Dr. Woodward on a whim at someone's house in Milwaukee, but did not remember the owner or location of the house. She also stated that the lightning bolt stationery happened to be just sitting by the computer. Rachelle Shannon further testified that after typing the letter, she tried to show it to other people who were there, including Angela Shannon and David Eck, but that "nobody was interested in it," so she put it in an envelope and placed it in her purse. She testified inconsistently that she did not recall if Angela had handled the letter, that Angela must have handled the letter, that she did not remember if Angela had read it, and that Angela definitely did not read it.

Rachelle Shannon testified she purposely misspelled Milwaukee in the threat letter. She testified she gave the sealed envelope to Angela to mail when they were in the Sacramento airport, at the time Angela left with Eric Armstrong. After Rachelle Shannon became aware Angela was a suspect, she wrote her daughter from prison about the threat letter and contacted the Bureau of Alcohol, Tobacco and Firearms, describing the letter and claiming credit for it. On cross-examination, Rachelle Shannon admitted to lying to government investigators in the past and taking credit for other violent anti-abortion crimes in an effort to exculpate others. Rachelle Shannon also acknowledged that she had spelled Milwaukee correctly five times in various letters presented to her.

Angela Shannon also testified in her own defense. She testified she had no knowledge of the contents of the threat letter. She testified her mother typed the letter at a house whose location and owner she could

not recall. Angela Shannon further testified she did not knowingly handle the threat letter and could not explain how the letter contained her fingerprints. She denied telling Armstrong that she did not want the letter traced to her, or that she subsequently told him that she did not want to get him in trouble.

The government offered the letter Eck had written to Angela, found in the September 1993 search, as impeachment during Angela's cross-examination. The government contended this letter indicated that Angela had lied in denying knowledge of the threat letter. The district court admitted the letter and gave a limiting instruction telling the jury that the court admitted the letter not for the truth of anything Eck said in the letter, but only to show that statements in the letter had been directed to the defendant, and that to that extent they were relevant to the defendant's knowledge.

The government and Shannon each submitted proposed jury instructions. The government proposed a deliberate ignorance or *Jewell* instruction, which the court accepted over Shannon's objection. The instruction precisely followed the Ninth Circuit Model Jury Instruction on deliberate ignorance.[1] The jury convicted Shannon.

In the Presentence Report, the probation officer recommended a two-level increase for obstruction of justice pursuant to section 3C1.1 of the Sentencing Guidelines, based on the determination that Angela Shannon had lied under oath at her trial. Shannon objected to the recommendation and the parties briefed the issue. The district court found that Angela Shannon had willfully given false testimony on material matters, and issued an order as part of the judgment that contained these findings on obstruction of justice. The district court attached to the order that por-

tion of the government's brief that set forth the false testimony that formed the basis for the finding of obstruction of justice. The district court sentenced Shannon to forty-six months in prison, a three year term of supervised release, and restitution in the amount of approximately $6,000 for the costs of security measures at the Planned Parenthood clinic.

## II. DISCUSSION

### A. Jewell Instruction

The standard of review for the propriety of a "deliberate ignorance" or *Jewell* instruction is *de novo*. *United States v. Fulbright*, 105 F.3d 443, 446–47 (9th Cir.1997).

The government needed to show Angela's knowledge of the threatening nature of the letter to prove Shannon guilty of attempted interference with commerce by threats and with mailing a threatening communication. The concept of "knowledge" for purposes of the criminal law is not limited to positive knowledge but "includes the state of mind of one who does not possess positive knowledge only because he consciously avoided it." *Jewell*, 532 F.2d at 702. Shannon argues the absence of sufficient evidentiary support for the *Jewell* instruction and that the error was prejudicial.

Where the defendant's knowledge is at issue, a "deliberate ignorance" or "*Jewell*" instruction may be given where it is warranted by the evidence presented at trial. *Id.* at 703–04. If the parties present evidence of actual knowledge as well as deliberate ignorance, a *Jewell* instruction is appropriate. *United States v. Perez–Padilla*, 846 F.2d 1182, 1183 (9th Cir.1988) (per curiam). Before a defendant can be deemed to be deliberately or willfully ignorant, facts must have put her on notice of the probability of

---

1. Instruction No. 10 of the district court's charge to the jury read:

 YOU MAY FIND THAT THE DEFENDANT ACTED KNOWINGLY IF YOU FIND BEYOND A REASONABLE DOUBT THAT THE DEFENDANT WAS AWARE OF A HIGH PROBABILITY THAT THE LETTER TO DR. WOODWARD CONTAINED A THREAT TO INJURE HIM AND DELIBERATELY AVOIDED LEARNING THE TRUTH.

 YOU MAY NOT FIND SUCH KNOWLEDGE, HOWEVER, IF YOU FIND THAT THE DEFENDANT ACTUALLY BELIEVED THAT THE LETTER DID NOT CONTAIN SUCH A THREAT, OR IF YOU FIND THAT THE DEFENDANT WAS SIMPLY CARELESS.

 *See* 9th Cir.Crim. Jury Instr. 5.07 (1995).

the occurrence of criminal activity, that the defendant failed to investigate, thus deliberately choosing to not verify or discover the criminal activity. *United States v. Barnhart*, 979 F.2d 647, 652 (8th Cir.1992). However, a district court cannot give a *Jewell* instruction when the evidence points only to the defendant either having knowledge or not having knowledge. *United States v. Mapelli*, 971 F.2d 284, 286 (9th Cir.1992) (citation omitted).

Shannon argues the evidence presented in this case only suggests either actual knowledge or no knowledge of criminal activity. Shannon contends the evidence shows she may have known the contents of the letter were somehow connected to anti-abortion activities but nothing suggested the letter could be related to criminal activities against abortion providers. Alternatively, Shannon argues that the government presented the following evidence suggesting actual knowledge: Angela Shannon's fingerprints on the letter itself, the characteristic spelling of "Milwalkie", and her comment to Armstrong that she did not want the letter traced to her. Thus, Shannon contends that with the evidence showing only no knowledge or actual knowledge that the district court erred in giving the *Jewell* instruction. *See Mapelli*, 971 F.2d at 286.

We acknowledge that the government presented good circumstantial evidence of actual knowledge. However, the parties also presented substantial evidence that Shannon was aware of a high probability that the letter contained a threat, but that she deliberately avoided learning the exact truth to disassociate herself from the threat. Specifically, while acknowledging her mailing of the letter, Shannon asserted ignorance of the threatening nature of its contents. No witness testified to seeing Angela Shannon writing or reading the threat letter, nor did she admit having done so. Furthermore, Shannon claimed to not know the identity of Dr. Woodward, despite having worn a transmitting wire into the Planned Parenthood clinic where Dr. Woodward performed abortions in an undercover operation. In addition, Rachelle Shannon testified that she tried to show the letter on lightning bolt stationery to Angela while wearing gloves.

The evidence and inferences therefrom were subject to dispute. A jury could have rejected actual knowledge but reasonably found on the evidence that Angela Shannon acted knowingly in mailing the letter; that she averted her eyes from the actual text of the letter in an attempt to avoid incriminating herself. Angela's handling of the letter would justify a jury in concluding that Angela had an awareness of the contents of the letter but deliberately sought to avoid knowing more. Thus, the giving of the *Jewell* instruction did not constitute error.

**B. Admission of Eck Letter**

 A district court's evidentiary rulings are reviewed for abuse of discretion. *United States v. Blaylock*, 20 F.3d 1458, 1462 (9th Cir.1994). Alleged violations of the Confrontation Clause are reviewed *de novo*. *United States v. George*, 960 F.2d 97, 99 (9th Cir.1992).

 Shannon argues that the admission of the letter from David Eck to Angela Shannon during her cross-examination constituted hearsay. Hearsay consists of out-of-court statements "offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). We determine that the Eck letter did not constitute hearsay because the government did not offer the letter to prove the truth of the matter asserted. Rather the government offered the Eck letter to prove Shannon's knowledge of the threat letter on the basis that she received a warning from Eck. Moreover, "[n]o Confrontation Clause issue is raised where the statements are not offered for the truth of the matter asserted." *United States v. Lujan*, 936 F.2d 406, 410 (9th Cir.1991) (per curiam) (citation omitted).

 However, we conclude that the Eck letter does not satisfy the relevancy requirement of Rule 402 of the Federal Rules of Evidence. The Eck letter reflected the knowledge and thoughts of Eck, not Angela Shannon. Therefore, the Eck letter lacks relevancy on the issue of Shannon's knowledge of the threat letter. Furthermore, the Eck letter does not show how Eck received

his knowledge about the threat letter and whether he used that knowledge to warn only Shannon or whether he warned everyone he knew in the anti-abortion movement. Shannon also objected on relevancy grounds at the district court and the district court erred in admitting the Eck letter over Shannon's objection.

Moreover, assuming that the Eck letter had some relevance in the sense that Eck would not have written Shannon unless they had prior communication regarding the threat letter, the letter would nevertheless fail admissibility under Rule 403 of the Federal Rules of Evidence. Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The Eck letter, even if arguably relevant under Rule 401, contains so many uncertainties that its probative value to show Shannon's knowledge of the contents of the letter, if any, is very low. Furthermore, the admission of the Eck letter presents a strong danger of prejudice to Shannon by allowing a jury to infer her knowledge upon a very inadequate basis.[2]

After review of the record, we conclude any error in the admission of the Eck letter constitutes harmless error. The government produced overwhelming evidence against Shannon independent of Eck's letter. This evidence included Shannon's fingerprints on the threat letter and its envelope, the characteristic misspelling of Milwaukee, Eric Armstrong's testimony concerning the mailing of the letter and conversation with Shannon after the mailing, and the covert activities performed by Shannon at Dr. Woodward's clinic in Milwaukee.

## C. Enhancement for Obstruction of Justice

The district court imposed a two-level upward adjustment on Shannon's sentence because the district court found she had obstructed justice by committing perjury on the witness stand. Shannon contends that the district court erred in imposing the upward adjustment without fully considering whether Shannon committed willful perjury. The district court's determination that Angela Shannon obstructed justice represents a factual finding reviewed for clear error. *See United States v. Ancheta,* 38 F.3d 1114, 1117 (9th Cir.1994) (citation omitted). The district court's legal construction of the relevant sentencing guidelines is reviewed *de novo. Id.*

After Shannon objected to the recommended sentence enhancement, the district court needed to "review the evidence and make independent findings necessary to establish a willful impediment to, or obstruction of, justice, or an attempt to do the same, under the perjury definition [the Supreme Court] set out." *United States v. Dunnigan,* 507 U.S. 87, 95, 113 S.Ct. 1111, 1117, 122 L.Ed.2d 445 (1993). In order to find perjury, the district court must find that the defendant's testimony was (1) false, (2) material and (3) willful. *Id.* at 94, 113 S.Ct. at 1116; *accord United States v. Robinson,* 63 F.3d 889, 891–92 (9th Cir.1995).

The district court in its special findings on the enhancement issue found Shannon's testimony to be false, material and willful. The district court adopted the government's summary of four specific falsehoods and three general falsehoods. In doing so, the district court stated it was "firmly convinced in its own mind that defendant was knowingly and deliberately testifying falsely—in order to deflect all inferences of her own culpability."

The district court made the required independent findings of perjury and we cannot say that these findings lack support in the record. Thus, the district court's conclusion that Shannon committed perjury and therefore obstructed justice is not clearly erroneous. The two-level upward enhancement for obstruction of justice did not constitute error.[3]

---

**2.** Shannon did not raise on appeal that the admission of the Eck letter violated Rule 403. However, Shannon did object to the admission at the district court, arguing that prejudice to Shannon outweighed any relevance of the Eck letter.

**3.** Obstruction of justice resting on perjury should require a high degree of proof. Mere dispute or

## III. CONCLUSION

The conviction and sentence of Angela Shannon are **AFFIRMED.**

disagreement as to a defendant's perception of facts, without more, should not give rise to a charge of perjury in the context of sentencing.